OPINION
 

 Per Curiam:
 

 This is an original petition for writ of prohibition seeking to prevent the district court from proceeding on a petition for an order requiring petitioners to show cause why they should not be held in contempt for interfering with the state engineer and water commissioners in regulating adjudicated water rights along the Humboldt River. Petitioners contend that the district court lacks jurisdiction based on sovereign immunity.
 

 We conclude that petitioners waived sovereign immunity when the United States purchased, and petitioners took, the reservation land subject to previously adjudicated water rights. Petitioners ratified this waiver by their historical compliance with the Humboldt Decree, including paying assessment fees and permitting the state engineer and water commissioners access to the reservation. Consequently, petitioners are subject to the jurisdiction of the Sixth Judicial District Court, and we therefore deny the petition for writ of prohibition.
 

 In 1913, the state engineer initiated water rights adjudication procedures for the Humboldt River.
 
 See
 
 Ormsby County v. Kearney, 37 Nev. 314, 142 P. 803 (1914). The state engineer issued an order of determination for the Humboldt River in 1923. As part of the adjudication, the Sixth Judicial District Court decreed water rights to five ranches. In 1935, the Sixth Judicial District Court amended the decree, completing its adjudication of water rights for the Humboldt River. This decree became known as the Humboldt Decree, and thereafter, the state engineer and the water commissioners were responsible for distributing the water rights adjudicated under the Decree. Subsequently, between 1937 and 1942, the United States purchased the five ranches to form the South Fork Reservation for the Te-Moak Tribe of the Western Shoshone Indians (the tribe).
 

 For approximately fifty-five years, the tribe cooperated with the state engineer and water commissioners, allowing them access onto the reservation. In particular, the tribe allowed the state engineer and water commissioners to enter the reservation and to traverse the reservation to reach private lands on which diversions that served the tribe’s water rights, as well as other landowners’ rights, were located. It appears from the documentation submitted to this court that the United States paid the assessment fees for a period of time in the 1970s and early 1980s, and that the tribe paid the assessment fees from the mid-1980s until at least the
 
 *808
 
 early 1990s. However, on March 8, 1998, the tribe adopted two resolutions decreeing that water commissioners would not be allowed to enter the reservation and that the tribe would not pay assessment fees that were charged against every holder of water rights in the Humboldt River.
 

 Subsequently, and at different times, the state engineer and water commissioners of the Sixth Judicial District Court filed three contempt proceedings in the Sixth Judicial District Court.
 
 [1]
 
 We are presently concerned with the third contempt proceeding, which is the subject of this petition. In that contempt proceeding, the state engineer sought an order from the district court directing petitioners to show cause why they should not be held in contempt for frustrating the water commissioners’ enforcement of the Humboldt Decree, specifically regarding an incident that occurred on September 13, 1999.
 

 On September 13, 1999, Wayne Testolin, a supervising water commissioner, and two other water commissioners entered the reservation to reach a private ranch adjacent to the reservation, known as the Gund Ranch, for the purpose of regulating the river pursuant to the Humboldt Decree. Some of the tribe’s water rights are served by diversions located on the Gund Ranch. Consequently, to properly control the tribe’s water rights, as well as water rights for other private landowners, the diversions located on the Gund Ranch must be adjusted.
 
 [2]
 
 When the water commissioners entered the reservation, they were followed by a tribal peace officer. The water commissioners traveled off the reservation and onto the Gund Ranch, where they were stopped by the tribal peace officer and Mr. Marvin McDade, chairman of the South Fork Band Council, and escorted back to the tribal office on the reservation. Mr. Testolin was handcuffed, charged with trespass and escorted off the reservation.
 

 On November 9, 1999, the state engineer and water commissioners of the Sixth Judicial District Court petitioned the district
 
 *809
 
 court for an order to show cause why the tribe and Mr. McDade should not be held in contempt for interfering with the water commissioners’ authority to regulate the Humboldt River. The tribe and Mr. McDade filed a motion to dismiss the petition, which the district court denied. The tribe and Mr. McDade then filed this petition for a writ of prohibition to prevent the district court from proceeding with a contempt hearing, contending that the district court lacks jurisdiction over the tribe and Mr. McDade, in his official capacity, and that the United States is an indispensable party to the district court contempt proceedings.
 

 Turning to the issue of the district court’s jurisdiction over the tribe, “[i]t is well established that Indian tribes possess the same common-law immunity from suit traditionally enjoyed by sovereign powers.” Val-U Constr. Co. v. Rosebud Sioux Tribe, 146 F.3d 573, 576 (8th Cir. 1998);
 
 accord
 
 Blatchford v. Native Village of Noatak, 501 U.S. 775 (1991); Pan American Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir. 1989). However, sovereign immunity can be waived.
 
 See
 
 Puyallup Tribe v. Washington Game Dept., 433 U.S. 165 (1977). Such a waiver may not be implied, but must be expressed unequivocally.
 
 See
 
 Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58-59 (1978). A waiver does not require the invocation of “magic words” indicating that a tribe has waived its sovereign immunity.
 
 See Val-U Constr. Co.,
 
 146 F.3d at 577.
 

 Generally, without congressional authority, Indian tribes are exempt from suit.
 
 See Santa Clara,
 
 436 U.S. at 58. However, some courts have concluded that a tribe, by its actions, may consent to suit without express congressional authority. For example, in United States v. Oregon, 657 F.2d 1009, 1013-16 (9th Cir. 1981), the court held that an Indian tribe may consent to suit without express congressional authority, and that a tribe’s intervention in establishing its fishing rights constituted consent to the district court’s jurisdiction to issue and modify an equitable decree that encompassed tribal rights.
 
 See also
 
 McClendon v. United States, 885 F.2d 627, 629 n.1 (9th Cir. 1989) (stating that initiation of litigation by the United States in its capacity as tribal trustee could potentially result in a waiver of tribal immunity despite the fact that the tribe was not a party to the suit); Native Village of Eyak v. GC Contractors, 658 P.2d 756 (Alaska 1983) (determining that an Indian tribe waived its sovereign immunity from suit without obtaining congressional authority by entering into an agreement containing an arbitration clause).
 

 
 *810
 
 In this case, the tribe is the successor-in-interest to owners of Humboldt Decree water rights and has enjoyed the benefits of the Decree. Until 1998, water commissioners entered the reservation without interference to regulate the Humboldt River to ensure that all users received their decreed water rights. For the past fifty-five years, the tribe allowed the water commissioners to travel on and across the reservation, and the tribe paid assessment fees pursuant to the Decree for some period of time between the mid-1980s and early 1990s. Finally, the deeds to the property the United States purchased for the tribe specifically mention the appurtenant water rights and/or the Humboldt Decree. We conclude that the purchase of the reservation land subject to previously adjudicated water rights constituted an express waiver of sovereign immunity, and that the tribe’s actions in benefiting from and abiding by the Humboldt Decree for more than five decades served to ratify this waiver.
 
 See
 
 State Engineer v. South Fork Band of Te-Moak Tribe, 66 F. Supp. 2d at 1163, 1172 (D. Nev. 1999) (stating that “[i]f there remain[s] any doubt as to the United States [’] express and unequivocal waiver in behalf of the Tribe, in its initial purchase of the decreed rights, the Tribe’s actions over the ensuing fifty years since the purchase of their decreed water rights clearly demonstrate a continuing ratification of its initial waiver of immunity”).
 

 We have recognized that the Sixth Judicial District Court has continuing jurisdiction over matters arising out of the administration of the Humboldt Decree. State Engineer v. Sustacha, 108 Nev. 223, 826 P.2d 959 (1992). The Sixth Judicial District Court has the authority to hold in contempt those who interfere with or frustrate the actions of the state engineer or water commissioners in the administration of the Humboldt Decree. State v. District Court, 52 Nev. 270, 286 P. 418 (1930).
 

 The tribe enjoys sovereign immunity, and thus, generally, cannot be subjected to the jurisdiction of a state court.
 
 See, e.g.,
 
 Snooks v. District Court, 112 Nev. 798, 919 P.2d 1064 (1996) (holding that a Nevada state court had no jurisdiction to entertain a civil action filed by a non-Indian against an Indian for events that occurred on Indian land); Patterson v. Four Rent, Inc., 101 Nev. 651, 707 P.2d 1147 (1985) (holding that a Nevada state court had no jurisdiction over Indian claims to land allotments). However, here, as the purchase of the tribe’s reservation land subject to the Humboldt Decree, constituted a waiver of sovereign immunity, the Sixth Judicial District Court is within its authority
 
 *811
 
 in exercising jurisdiction over the tribe concerning its alleged interference with the administration of water rights pursuant to the Decree. To hold that the tribe is not amenable to the jurisdiction of the Sixth Judicial District Court under these circumstances would frustrate the district court’s authority over matters arising out of the administration of the Decree.
 

 Finally, petitioners’ contention that the district court lacks jurisdiction over the contempt proceeding because the United States is an indispensable party and has not been joined is without merit. The actions giving rise to the contempt proceedings are those of petitioners, not the United States. Petitioners, not the United States, created and adopted the resolutions that frustrated and interfered with the water commissioners’ efforts to regulate the Humboldt River. Although the United States, as trustee, is the legal owner of the property and accompanying water rights,
 
 see
 
 Appropriations Act for the Department of the Interior, Pub. L. No. 68-580, 43 Stat. 1141, 1149 (1925); Proclaiming Certain Lands in Nevada to be an Indian Reservation, 6 Fed. Reg. 1203 (1941), the interests of the United States will not be affected by the contempt proceedings. Consequently, we conclude that the district court does have jurisdiction because the United States has not been joined as a party to the contempt proceedings.
 

 A writ of prohibition may issue to arrest the proceedings of a district court exercising its judicial functions, when such proceedings are in excess of the jurisdiction of the district court. NRS 34.320;
 
 see
 
 Budget Rent-A-Car v. District Court, 108 Nev. 483, 835 P.2d 17 (1992). We have held that a writ of prohibition is an appropriate vehicle through which to challenge the district court’s improper exercise of jurisdiction.
 
 See
 
 Indiana Ins. Co. v. District Court, 112 Nev. 949, 920 P.2d 514 (1996); Phelps v. District Court, 106 Nev. 917, 803 P.2d 1101 (1990).
 

 Here, since petitioners waived their sovereign immunity, we conclude the Sixth Judicial District Court has jurisdiction over petitioners in the underlying contempt proceedings. Consequently, we are not satisfied that this court’s intervention by way of extraordinary relief is warranted at this time. We therefore deny the petition.
 
 [3]
 

 [1]
 

 The first contempt proceeding (Humboldt I) was filed against petitioners, but was subsequently amended to name the United States as a respondent. The United States filed a notice of removal, removing the proceeding to federal court. The federal court denied the state’s motion to remand the case to state court.
 
 See
 
 State Engineer v. South Fork Band of Te-Moak Tribe, 66 F. Supp. 2d 1163 (D. Nev. 1999). The state engineer also filed a separate contempt proceeding (Humboldt II) in the Sixth Judicial District Court against the United States in an effort to compel the United States to pay the assessment fees. Again, the United States filed a notice of removal to federal court. The state engineer filed a motion to remand the proceedings to state court. At the time this petition for writ of prohibition was filed, the state engineer’s motion to remand remained pending in federal court.
 

 [2]
 

 The state engineer and water commissioners contend that they cross the reservation to reach the Gund Ranch because it provides the most reasonable access to the ranch.
 

 [3]
 

 We grant the real parties in interest’s motion to file supplemental authority and direct the clerk of this court to file the supplemental authority appended to the motion. We have considered this supplemental authority in resolving the instant petition.