**STATE ENGINEER OF THE STATE OF NEVADA, and Water Commissioners of the Sixth Judicial District Court, Petitioners,**

**Pershing County Water Conservation District, Petitioner–Intervenor**

v.

**SOUTH FORK BAND OF THE TE–MOAK TRIBE OF WESTERN SHOSHONE INDIANS OF NEVADA; Marvin McDade, in his capacity as Chairman of the South Fork Band Council; and the United States of America, as Trustee for the South Fork Band of the Te–Moak Tribe of Western Shoshone Indians of Nevada, Respondents.**

No. CV–N–98–679–ECR(RAM).

United States District Court, D. Nevada.

Aug. 30, 2000.

Paul Taggart, Deputy Attorney General, Carson City, NV, for State Engineer of the State of Nevada.

Laura A. Schroeder, Portland, OR, for Intervenor Pershing County Water Conservation District.

Shirley Smith, AUSA, Reno, and Patrick Barry, Attorney Department of Justice, Environment & National Res. Div., Indian Resources Section, Washington, DC, for U.S.A.

Raymond Rodriguez, Nevada Legal Services, Inc., Carson City, NV, for South Fork Band of the Te–Moak Tribe, Marvin McDade.

## ORDER

EDWARD C. REED, Jr., District Judge.

On January 21, 2000(# 78), Petitioners moved the Court to reconsider its decision on the original motion for remand. In the course of consideration of the motion for reconsideration, the Court analyzed the question of the subject matter jurisdiction of the federal court. That question was resolved in the minute order filed June 26, 2000 (# 101). Clearly, the court has subject matter jurisdiction to hear the case.

The Court then directed all parties to file points and authorities on the question of the federal policies which underlie the McCarran Amendment and its application in the Colorado River doctrine (# 101). All parties have complied with the order of the Court. The matter has been fully briefed.[1]

Although it waives the sovereign immunity of the United States in water rights cases, the McCarran Amendment does not deprive the federal court of jurisdiction over such cases. Therefore, the present case stands as one in which the state district court and the federal district court have concurrent jurisdiction, as stated in the order filed August 20, 1999(# 54). In such situation, the federal court must consider whether deference to the jurisdiction of the state court would be appropriate under the Colorado River doctrine. The court has found clear error in its analysis of the Colorado River doctrine as applied to the facts of the current matter. Therefore, the court has elected to reconsider that part of the earlier decision.

■■■ Generally, the law of the case doctrine bars reconsideration of an issue that has already been decided by the same court or the higher appellate court. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.1993). However, the doctrine does not limit the power of the court, but rather serves to guide the exercise of its discretion. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The court may in its discretion depart from the law of the case in certain circumstances: (a) where the first decision was clearly erroneous; (b) where there has been an intervening change in legal authority; (c) where the evidence on remand is substantially different; (d) where other changed circumstances exist; or (e) where manifest injustice would otherwise result. *Thomas*, 983 F.2d at 155. Here, because the court clearly erred in its decision not to defer to ongoing administration of water rights under the Humboldt decree in the state court, the court declines to follow the law of the case.[2]

*IT IS, THEREFORE, HEREBY ORDERED* that the order (# 54) filed August 20, 1999, is amended as follows: The paragraph on the bottom of page two, which begins, "However, remaining before the Court" is *DELETED.* The following paragraph is appended in its place:

The Court therefore considers the amended motion to remand (# 16) filed by Petitioners and directed against Respondent United States' amended notice of removal (# 6). Two parties have opposed Petitioners' amended motion to remand:

---

1. The State Engineer and the Water Commissioners of the Sixth Judicial District, as well as the Pershing County Water Conservation District, have requested oral argument on the matter. Because it does not appear that oral argument would be useful to the Court, the requests for oral argument are denied.

2. The Court notes that 28 U.S.C. § 1447(c) does not affect the present decision. The original motion for remand was timely filed within 30 days after the filing of the notice of removal. Also, the amended motion for remand was timely filed within 30 days after the filing of the amended notice of removal.

Respondent South Fork Band of the Te-Moak Tribe filed its response (# 17) on January 20, 1999, and Respondent United States filed its response (# 20) on February 1, 1999. For the reasons outlined below, the amended motion to remand (# 16) will be granted.

*IT IS FURTHER ORDERED* that the material from the heading "**D. Colorado River Abstention**" on page thirty-two, to the end of the first paragraph of text on page forty-four, is *DELETED.* The following language is appended in its place:

### D. Colorado River Doctrine

■ The Supreme Court first announced the Colorado River doctrine, sometimes known as Colorado River abstention, in the context of the adjudication of water rights asserted by the federal government. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), involved concurrent proceedings in the state court and in the federal court. In that case, the United States brought suit on its own behalf and on behalf of two Indian tribes and asked the federal court to determine its rights to water in certain tributaries located in Colorado water Division No. 7. Shortly afterward, one defendant in the federal action asked the state district court to require the United States to participate in the comprehensive adjudication of water rights in the state district court for Division 7. Despite its holding that not one of the three traditional doctrines of abstention applied, the Supreme Court approved the decision of the district court to dismiss the federal case.

The high court decision rested on the determination that in exceptional circumstances, the otherwise unflagging duty to exercise federal jurisdiction should give way to traditional principles of wise judicial administration, which include attention to conservation of judicial resources and comprehensive litigation decisions.

Although this case falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. *Id.* at 817, 96 S.Ct. 1236. More specifically, the Supreme Court held that the clear federal policy against piecemeal adjudication of water rights, as expressed in the McCarran Amendment, compelled the conclusion that the district court correctly deferred to the state court proceeding.

[T]he circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention. The former circumstances, though exceptional, nevertheless exist.

It has been held, for example, that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts.... In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation; and the other in which jurisdiction was obtained by the concurrent forums. No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required. Only the clearest of justifications will warrant dismissal.

Turning to the present case, a number of factors clearly counsel against concurrent federal proceedings. The most important of these is the McCarran Amendment itself. The clear federal policy evinced by that legislation is the

avoidance of piecemeal adjudication of water rights in a river system. This policy is akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding the generation of additional litigation though permitting inconsistent dispositions of property. This concern is heightened with respect to water rights, the relationships among which are highly interdependent.

*Colorado River,* 424 U.S. at 818–819, 96 S.Ct. 1236 (internal citations omitted). Since the rights of water users in any river system are so interrelated, then, the dangers inherent in piecemeal litigation become even more pronounced in water cases. Concern to avoid inconsistent orders and judgments, more than any other factor, drove the decision of the Supreme Court. The critical importance of effective and efficient water rights decisions tipped the balance against even the "virtually unflagging duty" of the federal courts to exercise their jurisdiction where granted.

According to the Colorado River case itself, therefore, the district court should consider four factors in its decision whether to defer exercise of its jurisdiction in favor of the state court: (a) the clear federal policy of avoidance of piecemeal adjudication of water rights in a river system, as evinced by the McCarran Amendment; (b) prior assumption of jurisdiction over the property involved in the litigation by the state court; (c) the geographic inconvenience of the federal forum; and (d) the order in which jurisdiction was obtained by the concurrent state and federal fora. *Id.* While no one factor is determinative, some factors may receive more weight than others, based on the specific facts of the case.

Later cases at the Supreme Court level have further refined the Colorado River doctrine. In one water rights case, *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983), several Indian tribes sued on their own behalf in federal court. The tribes asked the federal courts to determine their water rights. The federal district courts in Montana and Arizona deferred to concurrent state court adjudication actions based on the Colorado River doctrine. The Supreme Court upheld the decisions of the federal district courts to dismiss or stay the federal proceedings. In the decision, the high court reiterated that the most important factor to be considered in like cases was the federal policy found in the McCarran Amendment: "[T]he most important consideration in Colorado River, and the most important consideration in any federal water suit concurrent to a comprehensive state proceeding, must be the policy underlying the McCarran Amendment." *Id.* at 569–70, 103 S.Ct. 3201.

In another case which applied the Colorado River doctrine, *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court also considered two additional factors: whether federal or state law provides the rule of decision on the merits; and whether the state-court proceedings can adequately protect the rights of the parties. *Id.* at 23–36, 103 S.Ct. 927. In *Moses H. Cone,* the federal district court had denied the petitioner's request for an order to arbitrate because the matter stood before the state court. The court of appeals reversed, and the Supreme Court affirmed. The Supreme Court held that the stay order issued by the federal district court was an abuse of discretion. In the decision, the Supreme Court emphasized that the factors enumerated in the Colorado River case should be applied flexibly, not in mechanical fashion, and stressed the importance of the McCarran Amendment to the decision in that case:

> [T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise

of jurisdiction. The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case. Colorado River itself illustrates this principle in operation. By far the most important factor in our decision to approve the dismissal there was the 'clear federal policy ... [of] avoidance of piecemeal adjudication of water rights in a river system,' as evinced in the McCarran Amendment. We recognized that the Amendment represents Congress' judgment that the field of water rights is one peculiarly appropriate for comprehensive treatment in the forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts.

*Id.* at 16, 103 S.Ct. 927. Again, then, the Supreme Court highlighted the need for comprehensive treatment of water rights issues, and acknowledged the superior expertise of the state courts in that area. *Moses H. Cone* did not involve water-rights issues, however, and therefore, the McCarran Amendment did not come into play.[3]

Clearly, where water rights are at stake, the most important factor in the Colorado River analysis is the federal policy against piecemeal litigation as expressed in the McCarran Amendment. The Supreme Court so stated in the Colorado River case itself, *Arizona,* and *Moses H. Cone.* As will be seen below, the policies which underlie the McCarran Amendment clearly apply here. Therefore, the McCarran Amendment should weigh heavily in the balance in the present analysis of the court.

The language of McCarran Amendment itself, as well as the legislative history of the amendment, show three things: first, that enactment of McCarran Amendment resulted from concerns about both adjudication and administration of water rights; second, that the administration of water

rights includes the enforcement of the orders of the decree court; and third, that enforcement may include contempt proceedings and the application of sanctions. The amendment itself specifies that the United States shall be subject to suit in actions based on both the adjudication and the administration of water rights. In full, the McCarran Amendment provides:

> Consent is hereby given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: Provided, That no judgment for costs shall be entered against the United States in any such suit.

43 U.S.C. § 666(a). Concern for the effective administration of water rights decrees may also be seen in the latter part of the amendment, which explicitly subjects the United States to the judgments and orders of the relevant court.

As noted, the McCarran Amendment states that the United States "shall be subject to the judgments, orders, and decrees of the court having jurisdiction." *Id.* The "court having jurisdiction" must be

---

**3.** The Ninth Circuit has at times considered two additional factors in decisions which apply the Colorado River doctrine: whether one party has attempted to forum shop; and

whether the parallel proceedings in state court and in federal court are substantially similar. *Nakash v. Marciano,* 882 F.2d 1411, 1416–17 (9th Cir.1989).

deemed the court that determined the water rights at issue and entered its decree. The committee report made that express statement:

It is most clear that where water rights have been adjudicated by a court and its final decree entered, or where such rights are in the course of adjudication by a court, the court adjudicating or having adjudicated such rights is the court possessing the jurisdiction to enter its orders and decrees with respect thereto and thereafter to enforce the same by appropriate proceedings. In the administration of and the adjudication of water rights under State laws the State courts are vested with the jurisdiction necessary for the proper and efficient disposition thereof, and by reason of the interlocking of adjudicated rights on any stream system, any order or action affecting one right affects all such rights. Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its departments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts. Unless Congress has removed such immunity by statutory enactment, the bar of immunity from suit still remains and any judgment or decree of the State court is ineffective as to the water right held by the United States.

Sen. Rep. No. 82–755, at 4–6 (1952). Thus, the very purpose of the McCarran Amendment, as viewed by the committee that proposed the legislation, was to force the United States to be bound by the decisions of the state courts, and thereby prevent interference with the use of water by others that might result if the United States could avoid those decisions.

The legislative history of the McCarran Amendment also demonstrates that Congress contemplated that the United States might be brought before the state court in contempt proceedings.

Each water user under some State laws is required to pay a graduated fee or tax annually for the services of water commissioners. The commissioners must apportion the water to the decree users thereof in accordance with their decreed rights, and are required to deny the use of water to any user who at a particular time is not in the priority for the available supply of water. Failure to comply with the lawful orders of the water commissioner subjects the offender to the administrative and penal orders of the court, usually issued in contempt proceedings. If a water user possessing a decreed water right is immune from suits and proceedings in the courts for the enforcement of valid decrees, then the years of building the water laws of the Western States in the earnest endeavor of their proponents to effect honest, fair and equitable division of the public waters will be seriously jeopardized.

\*    \*    \*    \*    \*    \*

Since it is clear that the States have the control of the water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be a proper administration of the water law as it has developed over the years.

The committee is of the opinion that there is no valid reason why the United States should not be required to join in a proceedings when it is a necessary party and to be required to abide by the decisions of the Court in the same manner as if it were a private individual.

*Id.* The McCarran Amendment contains no language which exempts the United States from such enforcement proceeding in state court. Rather, the legislative history

makes clear the legislative conclusion that the United States had to be bound by the orders of the state courts in order to achieve effective administration of the water laws.

The clear legislative intent behind the McCarran Amendment demonstrates why the rationale of the Colorado River case should apply equally in the case at hand, even though this case involves the administration of water rights, in the form of an order to show cause for contempt, rather than the original adjudication of water rights at stake in the Colorado River case. Clearly the architects of the McCarran Amendment had equal concern for the comprehensive adjudication of water rights and the fair and effective administration of those rights. Both subsection (2) of the first part of 43 U.S.C. § 666(a) and Senate Report 82–755 contain evidence of that concern. The Senate report clearly states the need for effective and efficient administration of water rights, including the requirement that the United States, as any private individual, be subject to the orders and decrees of the court that administers the water rights at stake.

The Colorado River case and the case at hand differ in terms of their procedural posture. There, the United States filed an action in federal court, while the initial stages of the comprehensive adjudication of water rights in Colorado state court were underway. Here, the comprehensive adjudication of water rights in the Humboldt River took place in the state court years ago. The present enforcement action was filed in state court by the State Engineer and removed to federal court by the United States. The removed action forms part of the ongoing administration of water rights previously adjudicated in comprehensive proceedings by the state court. The case here presents the question of remand to the state court, rather than the dismissal or stay of a case which originated in federal court.[4] However, this procedural difference has no real significance. The United States could have filed an action in federal court to obtain an order that it did or did not have to pay the fees assessed by the State Engineer. In that case the state parties would most likely have moved for dismissal or stay of the federal case while the state court considered the order to show cause for contempt. The procedural posture of the instant case would then mirror that faced by the district court in Colorado River.

Although the McCarran Amendment does not address the question of removal, the United States should not be able to accomplish indirectly, by way of removal, what it does not have the right to do directly, by asserting sovereign immunity in the state court proceeding. The ability of the United States to remove to federal court, with no consideration of the Colorado River doctrine, would allow the federal government to deny to the state court the power to direct its actions in water rights cases, even where the state court had issued its decree. The federal government would always have the option to choose the federal forum. Such result flies in the face of the clear attention to state court adjudication and administration of water rights articulated in the legislative history of the McCarran Amendment.

Of even greater importance is the fact that the same concern to avoid piecemeal litigation applies equally to both cases. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *American Int'l Underwriters v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988). Here, any decision on the order to show cause for contempt would require the federal court to rule on substantive issues of water law. For instance, to what extent must property holders, or specifically Native American

---

4. Here, only one case exists, and that case must be returned to the state court in order for the case to survive. If the Court were to dismiss the case in federal court, rather than remand, no case would remain for the state court to consider. Therefore, remand, rather than dismissal, is appropriate.

tribes, allow access to reservation land if the state water commissioners need that access in order to perform their appointed tasks? What kind of access is required? If the landowner refuses to allow access, what kind of enforcement order or sanction may be entered? Which holders of water rights may be held responsible for paying fees assessed by the State Engineer or the water commissioners?

To illustrate one possibility, the federal court might decide that the water rights holder does not have to allow access, or must allow only limited access, where in some different enforcement matter, the state court might decide that the water rights holder must allow whatever access the state water commissioners require.

The assertion of jurisdiction by the federal court in the instant case will result in fragmented enforcement proceedings. Any orders issued by this court could conflict with prior orders and potential orders of the decree court. If the federal court finds the tribe in contempt, but not the United States, for example, that would be at least an implicit decision that the tribe, which actually receives the water, and not the federal government, the title holder of the land, must pay assessed water fees. That determination may or may not conflict with past or future orders of the Sixth Judicial District Court with respect to the Te–Moak Tribe, or other Indian tribes. An order to pay fees issued by the state court could be in conflict with any decision of this court that found no contempt and for that reason did not order payment of fees. In sum, the same dangers present in concurrent actions for the adjudication of water rights will arise when multiple courts attempt to administer or enforce such rights.

The policy which underlies the McCarran Amendment stands as the most important factor the court should consider in order to determine whether the Colorado

River doctrine requires deference to the state court. Other factors also weigh in favor of state court jurisdiction here. First, while it may now appear that concern for the efficient disposition of scarce judicial resources has not been well served by the long assertion of jurisdiction by the federal court, judicial economy will be best served, in the long run, by remand to the state court. All decisions with respect to the conflict over administration of the Humboldt River will be decided by one court. Second, the state court has previously assumed jurisdiction over the res, the Humboldt River. Third, the state court first obtained jurisdiction of the specific matter at hand, the enforcement action. Fourth, state law provides the rule of decision on the merits. Finally, the court finds no reason that the state court cannot or will not protect the rights of the parties in the matter.

Taking the policy of the McCarran Amendment as primary, as did the Supreme Court in the Colorado River case, the court weighs the factors to be considered and concludes that the instant case presents the extraordinary circumstances required for deference under the Colorado River doctrine. Therefore, the court defers to the state court in the matter at hand.[5]

***IT IS, THEREFORE, HEREBY ORDERED*** that the order of the court which denied Petitioners' motion to remand (# 6A), found on page forty-four of the order (# 54) filed August 20, 1999, is ***VACATED.***

***IT IS FURTHER ORDERED*** that the order of the court which denied Petitioners' amended motion to remand (# 16), found on page forty-four of the order (# 54) filed August 20, 1999, is ***VACATED.***

***IT IS FURTHER ORDERED*** that Petitioners' amended motion to remand (# 16), filed on December 11, 1998, is

---

**5.** The United States raises the point that it has already paid the water fees at issue in the case. That part of the case may, then, have become moot. However, the question of the

access that the water commissioners must be allowed remains at issue. Moreover, the question of criminal contempt should be decided by the state court.

*GRANTED.* The court defers to the jurisdiction of the state court pursuant to the Colorado River doctrine as announced by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

*IT IS FURTHER ORDERED* that this action is remanded to the Sixth Judicial District Court in and for the County of Humboldt.

*IT IS FURTHER ORDERED* that the motion to remand (# 6A) filed by Petitioners on December 10, 1998, is *DENIED AS MOOT.*

*IT IS FURTHER ORDERED* that the injunction (# 79) which bars further action on this matter by the Sixth Judicial District Court, filed January 21, 2000, is *LIFTED.*

The Clerk shall enter judgment accordingly.