*903
 
 OPINION
 

 Per Curiam:
 

 This appeal concerns the scope of a district court’s power to enter orders of contempt, and the standard upon which we must review such orders. When the legislature has provided for a direct appeal of a district court’s contempt order, we will review for abuse of discretion. We hold that a district court’s contempt power does not encompass the power to order an Indian tribe to enact a legislative resolution. The district court may order that, if a con-temnor continues in its contempt, it must post a bond as security to cover costs incurred as a result of the contempt. Additionally, the district court has the power to sentence a government official to jail for criminal contempt committed in an official capacity, but, under the facts here, it was an abuse of discretion to do so.
 

 FACTS
 

 Historical perspective
 

 This appeal represents the latest chapter in more than 100 years of litigation over water rights appurtenant to properties bordering the Humboldt River.
 
 [1]
 
 In 1913, responding to protracted litigation over the Humboldt and other rivers, the Nevada Legislature enacted a statutory system allowing the State Engineer to determine water rights from the State’s rivers and streams. After this court upheld this statutory scheme,
 
 [2]
 
 the State Engineer began a lengthy process of determining water rights on the Humboldt River. This process concluded in 1935, when the Sixth Judicial District Court entered a modified set of water rights decrees, collectively known as the Humboldt Decree.
 

 Among the properties covered by the Humboldt Decree were five privately-owned ranches, which the United States purchased between 1937 and 1942 to create a reservation for appellant South Fork Band of the Te-Moak Tribe of Western Shoshone Indians of Nevada (“the Tribe”). The original Humboldt Decree required affected landowners to pay a water assessment fee, which the
 
 *904
 
 United States paid on behalf of the Tribe for some period of time after creation of the reservation, although it is disputed whether the Tribe ever paid the fee itself.
 

 In order to control the flow of water to Tribal and private lands, the State Engineer must periodically adjust diversions located on property known as the Gund Ranch, which is adjacent to the reservation. The Gund Ranch diversion cannot reasonably be reached without crossing the reservation. By early 1998, the United States had ceased paying the Tribe’s assessment fee. On March 8, 1998, the South Fork Band Council (“the Tribal Council”) enacted a resolution that it would not pay the assessment fee and would not allow the State Engineer access to adjust the Gund Ranch diversion.
 

 After the Tribal Council refused to rescind its resolution, the State Engineer initiated contempt proceedings in the Sixth Judicial District Court against Marvin McDade, the Chairman of the Tribal Council, and the United States. The United States removed the matter to the United States District Court for the District of Nevada.
 
 [3]
 
 The United States District Court entered a preliminary injunction allowing the water commissioners onto the reservation, but not across it. Later, the United States District Court remanded the matter to the Sixth Judicial District Court,
 
 [4]
 
 but that order of remand is presently pending on appeal before the United States Court of Appeals for the Ninth Circuit.
 

 Procedural posture of the present litigation
 

 The separate events leading to the present litigation started in 1998, after the Tribal Council enacted a resolution that its “ditch rider” would adjust the Gund Ranch diversion, and that “the State of Nevada Water Master and employees must cease attempts to assess fees and regulate South Fork waters.”
 

 It became clear in early 1999 that the Tribe’s ditch rider was not regulating the water in conformance with the Humboldt Decree. On September 13, 1999, Wayne Testolin, Supervising Water Commissioner for the Humboldt Decree, and two other water commissioners entered the reservation in order to reach the Gund Ranch diversion. A Tribal police officer and Tribal Council Chairman McDade followed them. When the water commissioners entered the Gund Ranch, the police officer stopped them and placed Testolin under arrest for trespass. The Tribal officer then escorted Testolin off the reservation. There is no indication that the Tribe attempted to prosecute Testolin.
 

 
 *905
 
 On September 20, 1999, the State Engineer responded by issuing Order 1154, which ordered the Tribe to allow the water commissioners access across the reservation. The Tribe did not respond, and on November 9, 1999, the State Engineer filed a petition with the district court seeking an order to show cause why the Tribe and McDade should not be held in contempt of court.
 
 [5]
 
 After the district court denied the Tribe and McDade’s motion to dismiss the State Engineer’s petition, they sought direct relief from this court by way of a writ of prohibition, which we denied.
 
 [6]
 
 We held that the Tribe had waived sovereign immunity in this matter, as the Sixth Judicial District Court had jurisdiction over the water rights appurtenant to the reservation land before the reservation existed.
 
 [7]
 

 On remand, the district court engaged in a lengthy analysis of state and federal law, and concluded that it had exclusive jurisdiction over the Humboldt River water rights. The district court found the Tribe and McDade in contempt for preventing the water commissioners, who are officers of the court, from enforcing the Humboldt Decree, and for diverting water in violation of the Humboldt Decree.
 

 The district court ordered McDade and the Tribe to refrain from interfering with the water commissioners or from diverting water from the Humboldt River. It also sentenced McDade to three days’ imprisonment, but suspended the sentence. The court next ordered the Tribe to enact a resolution “to provide a safe environment for the [wjater [cjommissioners and allow access to the tribal property by the [wjater [cjommissioners to carry out their duties under the Humboldt Decree.’ ’ The district court stated that, if the Tribe did not enact such a resolution within thirty days, it would direct the Elko County Sheriff’s Department to provide protection to the water commissioners while on the reservation.
 

 The district court next ordered that, should the Tribe fail to abide by these injunctions, it would be required to post a $10,000 bond to cover the cost of security guards and/or locking mechanisms to prevent the Tribe from diverting water in violation of the Humboldt Decree. Finally, the district court ordered the Tribe to pay any extraordinary costs incurred in enforcing the Humboldt Decree. The Tribe and McDade appeal, challenging: (1) the district court’s order that the Tribe enact the resolution; (2) the order
 
 *906
 
 that, if the Tribe violates the contempt order, it must post a $10,000 bond; and (3) McDade’s suspended three-day jail sentence.
 

 DISCUSSION
 

 Jurisdiction and standard of review
 

 This is a direct appeal of the district court’s contempt order. We held in
 
 Pengilly
 
 v.
 
 Rancho Santa Fe
 
 Homeowners
 
 [8]
 
 that this court generally has no jurisdiction over appeals from contempt orders, but rather, such orders must be challenged through a writ petition.
 
 Pengilly
 
 relied on the fact that, in general, there is no statutory authority to appeal a contempt order.
 
 [9]
 
 This proceeding, however, arises in part from a contempt order entered as a final judgment under NRS 533.220, which expressly provides a right of appeal from the judgment “in like manner as appeals in other civil cases.”
 
 [10]
 
 Accordingly, we have jurisdiction over this direct appeal.
 
 [11]
 

 We also held in
 
 Pengilly
 
 that we will follow the standard of review applicable to the particular writ petition involved.
 
 [12]
 
 This rule obviously does not apply here, where we consider a direct appeal. Accordingly, we must determine which standard of review applies to a direct appeal of a contempt order. The contempt power involves a court’s inherent power to protect dignity and decency in its proceedings, and to enforce its decrees.
 
 [13]
 
 A district court generally has particular knowledge of whether a person has committed contempt.
 
 [14]
 

 
 *907
 
 A discretionary standard gives proper deference to the district court’s intricate knowledge of the proceedings, and affords the district court sufficient leeway to exercise its inherent power. Thus, when reviewing a contempt order on a direct appeal, as opposed to considering a writ petition, we will overturn the contempt order only where there has been an abuse of discretion.
 
 [15]
 

 Order to enact a resolution
 

 The district court ordered the Tribal Council to enact a resolution to provide a safe environment for the water commissioners and allow access across reservation land. The State Engineer characterizes this provision as an order to provide a Tribal police escort for the water commissioners. The actual language of the order, however, does not mention Tribal police. If the district court intended the words “provide a safe environment” to mean police escort, then the provision is unenforceable due to vagueness.
 
 [16]
 
 We view the provision as only requiring the Tribe to enact a resolution to abide by the injunctions of the contempt order. However, as discussed below, we conclude that ordering the Tribe to take legislative action constitutes a clear abuse of discretion by the district court.
 

 The Tribe argues that the district court’s order requiring the Tribe to enact the resolution violates the Indian Commerce Clause. The Indian Commerce Clause provides: “The Congress shall have Power . . . [t]o regulate Commerce . . . with the Indian Tribes.”
 
 [17]
 
 The United States Supreme Court has explained that, under the Indian Commerce Clause, “the States . . . have been divested of virtually all authority over Indian commerce and Indian tribes.”
 
 [18]
 
 Indian tribes, as sovereign nations, “have power to make their own substantive law in internal matters.”
 
 [19]
 
 The power to regulate an Indian tribe’s external affairs lies with Congress.
 
 [20]
 

 
 *908
 
 Whether or not a resolution to obey a court order is viewed as an internal tribal matter or as an external matter, a state court lacks the power to compel it. While the district court has jurisdiction over the Tribe to ensure compliance with the Humboldt Decree,
 
 [21]
 
 this jurisdiction does not extend to compelling legislative action by the Tribal Council. The district court enjoined the Tribe from interfering with the water commissioners’ access to the water diversions. The Tribe must abide by this injunction regardless of any Tribal resolution. The order to enact a resolution to provide a safe environment and allow the water commissioners access was superfluous and exceeded the district court’s jurisdiction. Therefore, requiring the Tribe to take legislative action constituted an abuse of discretion by the district court.
 

 The State Engineer argues, however, that the Tribe agreed to enact this resolution. Even assuming such an agreement could be valid, our review of the record indicates that McDade only offered to present such a measure for the Tribal Council’s vote. This offer did not vest the district court with jurisdiction to order the Tribal Council to vote in favor of the measure. Accordingly, we reverse that part of the district court’s order that requires the Tribal Council to enact a resolution, as an abuse of discretion. As noted, however, the district court may, on remand, enter orders imposing direct injunctive relief in aid of the Humboldt Decree.
 

 Bond requirement
 

 The Tribe argues that the requirement that it post a $10,000 bond if it violates the district court’s order illegally imposes a fine in excess of the statutory maximum fine of $500 for criminal contempt under NRS 22.100.
 
 [22]
 
 The State Engineer responds that the district court’s order was not a penalty in a criminal contempt proceeding, but rather a civil contempt order intended to coerce the Tribe into complying with the Humboldt Decree.
 

 The Tribe replies that the State Engineer initiated these contempt proceedings under NRS chapter 22, and is, therefore, limited by NRS 22.100. The State Engineer’s petition, however, was brought under both NRS chapter 22 and NRS 533.220 and specifically requests both civil and criminal contempt sanctions. By giving the district court supervisory control over the State Engineer’s
 
 *909
 
 distribution of water rights and the power to hold hearings on violations of water rights decrees, NRS 533.220 implicitly authorizes the district court to impose civil contempt penalties. The district court was not therefore limited to criminal contempt sanctions under NRS 22.100. We must still determine, however, whether the $10,000 bond requirement is civil or criminal in nature.
 

 We have explained that the distinction between civil and criminal contempt is whether the punishment is “designed to coerce the contemnor into complying with a court order . . . [or] is intended to punish the contemnor for disobeying a court order.’ ’
 
 [23]
 
 A civil contempt order “must be conditional or indeterminate— that is, it must end if the contemnor complies.”
 
 [24]
 
 A criminal contempt order “must be determinate or unconditional . . . [and it] is not affected by any future action by the contemnor.”
 
 [25]
 
 This court has held that where the punishment is punitive rather than coercive, we will view the proceedings to be criminal in nature.
 
 [26]
 
 Here, the district court ordered that the Tribe would have to post a $10,000 bond only if it violated the injunctions in the contempt order. This condition was designed to coerce the Tribe’s compliance. Thus, this is a civil contempt order, regardless of the district court’s motive.
 
 [27]
 

 Courts have inherent power to enforce their decrees through civil contempt proceedings, and this power cannot be abridged by statute.
 
 [28]
 
 A civil contempt order may be used to compensate the contemnor’s adversary for costs incurred because of the contempt.
 
 [29]
 
 The contempt order here required the Tribe, if it violated the contempt order, to post a bond to reimburse the State for extraordinary expenses incurred in protecting regulation of the Gund Ranch diversion from future interference. Such an order is within the district court’s inherent power and is not necessarily
 
 *910
 
 restricted or controlled by NRS 22.100. We affirm that part of the district court’s order requiring the Tribe to post a bond should it violate the valid portions of the contempt order in the future.
 

 Jail sentence
 

 The district court imposed a suspended three-day sentence against McDade for his action in detaining the water commissioners. McDade argues that he has absolute immunity from contempt orders for acts undertaken in an official capacity. This was an order exercising criminal contempt powers.
 

 This court in
 
 South Fork II
 
 held that the purchase of the Tribe’s reservation land effected a valid waiver of sovereign immunity, and that “[t]he Sixth Judicial District has the authority to hold in contempt those who interfere with or frustrate the actions of the state engineer or water commissioners in the administration of the Humboldt Decree.”
 
 [30]
 
 Accordingly, the State Engineer argues that the Tribe’s claim of immunity was raised in
 
 South Fork II
 
 and rejected. While the question of sovereign immunity was raised and resolved in
 
 South Fork II,
 
 the question of absolute immunity of a tribal official acting in that capacity, and the federal policy that protects tribal self-government, was not.
 

 Relying on cases giving tribal councils and officials immunity from civil liability, the Tribe argues by analogy that it is immune from civil and criminal orders of contempt. We disagree. Contempt powers involve a court’s ability to control proceedings before it and to enforce its orders and are not susceptible to analogy to tribal immunity from civil liability in connection with claims for damages,
 
 [31]
 
 declaratory, or prospective injunctive relief.
 
 [32]
 
 Because we conclude that immunity for government officials would thwart the purpose behind a court’s contempt power, we hold that, as a matter of public policy, government officials enjoy no absolute immunity from adjudications of contempt. Therefore, McDade was not immune from the district court’s contempt order. Our decision is bolstered by the United States
 
 *911
 
 Supreme Court’s dictum in
 
 Hutto v. Finney,
 

 [33]
 

 stating that a government official may be held in civil or criminal contempt, possibly even imprisoned. While it appears that a criminal contempt jail sentence is rarely, if ever, imposed against a government official for official acts, a government official may be jailed until he or she complies with a court order.
 
 [34]
 
 Such a civil contempt order, however, allows the government official to leave prison by complying with the court order. A criminal contempt order, in contrast, imposes an absolute sentence, which the official cannot escape; this is what occurred here. It is important to note that a contempt order against a government official for official acts applies against the office, not the individual.
 
 [35]
 
 Courts should only use criminal contempt against a government official for acts performed in an official capacity when the official has persistently refused to abide by court orders, or has persistently been disrespectful or disruptive in court proceedings.
 

 Here, McDade acted to stop what he viewed as a trespass on the reservation land, based on ambiguous language in a United States district court injunction. At the contempt hearing, McDade displayed a willingness to cooperate with the State Engineer and the district court. This is not the sort of persistent disregard of a court order that justifies incarceration for criminal contempt.
 

 We therefore reverse that portion of the order imposing a suspended three-day jail sentence against McDade.
 

 CONCLUSION
 

 District courts have discretion to find contempt and impose sanctions. Here, however, the district court abused its discretion in ordering an Indian tribe to undertake legislative action. Additionally, the district court abused its discretion by sentencing the Tribal Council Chairman to a suspended jail sentence for an official act, as such a sanction should only be used as a last resort when the government official persistently refuses to obey a court order. We reverse the portions of the district court’s contempt order directing the Tribe to adopt legislation and imposing a suspended sentence on the Tribal Chairman, and affirm the remainder of the order.
 
 [36]
 

 [1]
 

 For purposes of brevity and clarity, references to prior federal and state court proceedings involving the parties in the present dispute will be cited as “South Fork I, II, or HI,” based on their chronological order.
 

 [2]
 

 See Ormsby County v. Kearney,
 
 37 Nev. 314, 350, 142 P. 803, 809-11 (1914).
 

 [3]
 

 See State Engineer
 
 v.
 
 South Fork Band of Te-Moak Tribe,
 
 66 F. Supp. 2d 1163, 1165 (D. Nev. 1999) (hereinafter
 
 “South Fork I”), vacated in part,
 
 114 F. Supp. 2d 1046 (D. Nev. 2000) (hereinafter
 
 “South Fork III”).
 

 [4]
 

 See South Fork III,
 
 114 F. Supp. 2d at 1053.
 

 [5]
 

 The State Engineer also separately petitioned for an order to show cause against the United States for failure to pay the assessment fees. The United States removed the petition to the United States District Court, but that court remanded to the Sixth Judicial District Court. That order of remand is also pending on appeal before the United States Court of Appeals for the Ninth Circuit.
 

 [6]
 

 South Fork Band, Te-Moak Tribe v. Dist. Ct.,
 
 116 Nev. 805, 7 P.3d 455 (2000) (hereinafter
 
 “South Fork II"), cert. denied,
 
 531 U.S. 1191 (2001).
 

 [7]
 

 Id.
 
 at 810-11, 7 P.3d at 458-59.
 

 [8]
 

 116 Nev. 646, 649-50, 5 P.3d 569, 571 (2000).
 

 [9]
 

 See id.
 

 [10]
 

 NRS 533.220 provides, in part:
 

 2. Upon the neglect or refusal of any claimant to the use of water as provided in this chapter to carry out or abide by an order or decision of the state engineer acting as an officer of the court, the state engineer may petition the district court having jurisdiction of the matter for a review of such order and cause to be issued thereon an order to show cause why the order and decision should not be complied with.
 

 5. Appeals from the judgment may be taken to the supreme court in like manner as appeals in other civil cases; but notice of appeal must be served and filed within 40 days from the entry of judgment.
 

 [11]
 

 See
 
 NRAP 3A(b)(l).
 

 [12]
 

 Pengilly,
 
 116 Nev. at 650, 5 P.3d at 571-72.
 

 [13]
 

 See Noble
 
 v.
 
 Noble,
 
 86 Nev. 459, 463, 470 P.2d 430, 432 (1970),
 
 overruled on other grounds by Westgate
 
 v.
 
 Westgate,
 
 110 Nev. 1377, 1381, 887 P.2d 737, 739 (1994).
 

 [14]
 

 Pengilly,
 
 116 Nev. at 650, 5 P.3d at 571-72.
 

 [15]
 

 See Guerin
 
 v.
 
 Guerin,
 
 114 Nev. 127, 134, 953 P.2d 716, 721 (1998).
 

 [16]
 

 See State Indus. Ins. System v. Sleeper,
 
 100 Nev. 267, 270, 679 P.2d 1273, 1275 (1984) (civil contempt order is not enforceable unless it sets forth “ ‘ “the details of compliance in clear, specific and unambiguous terms” ’ ” (quoting
 
 Southwest Gas Corp. v. Flintkote Co., 99
 
 Nev. 127, 131, 659 P.2d 861, 864 (1983) (quoting
 
 Ex Parte Slavin,
 
 412 S.W.2d 43, 44 (Tex. 1967)))).
 

 [17]
 

 U.S. Const. art I, § 8.
 

 [18]
 

 Seminole Tribe of Florida v. Florida,
 
 517 U.S. 44, 62 (1996).
 

 [19]
 

 Santa Clara Pueblo
 
 v.
 
 Martinez,
 
 436 U.S. 49, 55 (1978).
 

 [20]
 

 See Boff v. Burney,
 
 168 U.S. 218, 221-22 (1897).
 

 [21]
 

 South Fork II,
 
 116 Nev. at 810-11, 7 P.3d at 458-59.
 

 [22]
 

 NRS 22.100 provides, in part:
 

 Upon the answer and evidence taken, the court or judge or jury, as the case may be, shall determine whether the person proceeded against is guilty of the contempt charged; and if it be found that he is guilty of the contempt, a fine may be imposed on him not exceeding $500, or he may be imprisoned not exceeding 25 days, or both ....
 

 [23]
 

 Warner v. District Court,
 
 111 Nev. 1379, 1383, 906 P.2d 707, 709 (1995) (discussing
 
 Hicks v. Feiock,
 
 485 U.S. 624, 633-35 (1988)).
 

 [24]
 

 Id.
 
 at 1383, 906 P.2d at 709.
 

 [25]
 

 Id.
 

 [26]
 

 See id.
 
 at 1379, 906 P.2d at 707;
 
 see also City Council of Reno
 
 v.
 
 Reno Newspapers,
 
 105 Nev. 886, 784 P.2d 974 (1989).
 

 [27]
 

 Cf. Reno Newspapers,
 
 105 Nev. at 893, 784 P.2d at 979 (concluding that “while the contempt proceeding had some aspects of civil contempt, the primary purpose was to punish those who violated the injunction, and therefore was criminal in nature”);
 
 see also Ex parte Sweeney,
 
 18 Nev. 74, 76, 1 P. 379, 380 (1883) (holding that a fine was punitive in nature and therefore it was a criminal contempt proceeding).
 

 [28]
 

 See Noble,
 
 86 Nev. at 463, 470 P2d at 432.
 

 [29]
 

 See State, Dep’t Indus. Rel.
 
 v.
 
 Albanese,
 
 112 Nev. 851, 856, 919 P.2d 1067, 1070-71 (1996).
 

 [30]
 

 South Fork II,
 
 116 Nev. at 810, 7 P.3d at 458 (citing
 
 State v. District Court,
 
 52 Nev. 270, 286 P. 418 (1930)).
 

 [31]
 

 See Dillon
 
 v.
 
 Yankton Sioux Tribe Housing Auth.,
 
 144 F.3d 581 (8th Cir. 1998);
 
 Val-U Constr. Co. v. Rosebud Sioux Tribe,
 
 146 F.3d 573 (8th Cir. 1998);
 
 Bottomly
 
 v.
 
 Passamaquoddy Tribe,
 
 599 F.2d 1061, 1067 (1st Cir. 1979);
 
 GNS v. Winnebago Tribe of Nebraska,
 
 866 F. Supp. 1185 (N.D. Iowa 1994);
 
 Cameron v. Bay Mills Indian Community,
 
 843 F. Supp. 334, 336 (W.D. Mich. 1994).
 

 [32]
 

 See Santa Clara Pueblo v. Martinez,
 
 436 U.S. 49, 59 (1978);
 
 see also Imperial Granite Co.
 
 v.
 
 Pala Band of Mission Indians,
 
 940 F.2d 1269 (9th Cir. 1991).
 

 [33]
 

 437 U.S. 678, 690-91 (1978).
 

 [34]
 

 Cf.
 
 Swett
 
 v.
 
 Schenk,
 
 792 F.2d 1447 (9th Cir. 1986).
 

 [35]
 

 See Coleman
 
 v.
 
 Espy,
 
 986 F.2d 1184, 1189 (8th Cir. 1993);
 
 Bd. of Supervisors v. Superior Ct. (Armstrong),
 
 39 Cal. Rptr. 2d 906, 918 (Ct. App. 1995).
 

 [36]
 

 We deny the State Engineer’s request that we determine exclusivity jurisdiction by the state court system over all matters arising in connection with the Humboldt Decree.