SOUTHWEST GAS CORPORATION, AND CHARLES H. McCREA, APPELLANTS, *v.* THE FLINTKOTE COMPANY—U.S. LIME DIVISION AND GYPSUM PRODUCTS DIVISION (FORMERLY BLUE DIAMOND DIVISION); ET AL., COLLECTIVELY REFERRED TO AS "SOUTHERN NEVADA INDUSTRIAL CUSTOMERS," RESPONDENTS.

No. 13853

March 1, 1983 659 P.2d 861

*Guild, Hagen & Clark, Ltd.,* Reno, for Appellants.

*Allison, Brunetti, MacKenzie, Hartman, Soumbeniotis & Russell, Ltd.,* Carson City, for Respondents.

## OPINION

By the Court, Manoukian, C. J.:

This is an appeal from a judgment of contempt[1] for failure to comply with a district court order which directed the Public Service Commission (Commission) to order Southwest Gas Corporation (Southwest) to refund to some of its customers certain moneys it had received from its suppliers of natural gas. Finding that appellants were not explicitly directed to take any action or refrain from any acts by the district court's order and that respondents did not have standing to initiate proceedings to enforce an order of the Commission in this manner, we reverse the judgment of contempt.

Southwest purchased natural gas from El Paso Natural Gas Co. (El Paso) for resale to its southern Nevada customers. The Southern Nevada Industrial Customers (Industrials) were a group of Southwest's customers. Any increases in the price of natural gas charged by El Paso to Southwest were under the jurisdiction of the Federal Energy Regulatory Commission (FERC). The FERC permitted El Paso to increase its rates for natural gas charged to Southwest without prior approval, subject to a final order from FERC or a settlement agreement. If FERC determined that the interim rate charged El Paso's customers was too high, refunds were ordered.

The Public Service Commission of Nevada, however, had jurisdiction over Southwest, pursuant to Chapter 704 of the Nevada Revised Statutes. Increases in the cost of natural gas from El Paso were either absorbed by Southwest or were passed along to Southwest's customers pursuant to orders of the Commission. The moneys refunded by El Paso, pursuant to FERC order, were distributed by Southwest to its customers according to contractual agreements or by order of the Commission.

Following petitions from the Flintkote Company and Titanium Metals Corporation of America, the Commission initiated its own investigation concerning certain refunds received by Southwest from El Paso according to refund orders of the FERC. The Commission issued its decision and order on January 14, 1976. This original order separated the refunds received

---

[1]In an unpublished order dated April 9, 1982, we denied the respondents' motion to dismiss appeal on the grounds that the order denying the motion to amend and supplement is a non-appealable order and that the appeal was not timely filed vis-a-vis the actual judgment of contempt. Thus, we construe the notice of appeal from the denial of the motion to amend and supplement as an appeal from the judgment of contempt itself. See Ross v. Giacomo, 97 Nev. 550, 635 P.2d 298 (1981).

by Southwest into "Part I Refunds" and "Part II Refunds" and established detailed procedures for distributing those refunds to Southwest's customers. The Commission also issued two amendatory orders following the original order, which clarified procedures for refunds earmarked for customers whose addresses were unknown and established the formula for determining the customers' pro rata shares of Part I Refunds.

On March 19, 1976, the Commission issued an Order in Erratum which acknowledged that the original order of January 14, 1976, failed to dispose of a certain class of refunds. The Commission allowed Southwest to place these omitted refunds in a deferred account and amortize those refunds "at the rate of 1/60th per month and [credit] to other gas revenues, Account 495." In response, the Industrials petitioned the district court on March 31, 1976, for relief, claiming that both the amendatory orders and the Order in Erratum were not supported by substantial evidence. On April 7, 1977, the district court issued an order which vacated the two amendatory orders and the Order in Erratum for lack of substantial evidence in support of the Commission's rulings. The case was remanded to the Commission "with directions to issue an appropriate order directing Southwest to refund to each of its customers, in accordance with the detailed refunding procedures set forth in the Commission's opinion . . . dated January 14, 1973, that amount of refunds retained by Southwest which will ensure that each such customer will obtain his proportionate share of the total refunds received by Southwest . . . ." On May 3, 1977, the Commission issued its Order in Compliance to the district court's order. The Commission's compliance order recited verbatim the language of the district court's order and further ordered Southwest to submit a report, within ninety days, which detailed all refunds distributed pursuant to the Commission's original order of January 14, 1973. Charles McCrea, Executive Vice-President and General Counsel for Southwest, submitted a letter on May 27, 1977, which reported Southwest's efforts concerning refunds. McCrea stated that those refunds which Southwest had amortized to utility revenues, pursuant to the amendatory orders and Order in Erratum, were not available for distribution to Southwest's customers. Because the orders issued by the Commission after the original order were valid until vacated by the court, McCrea maintained that the amortization of certain refunds done under those later orders did not have to be reversed.[6]

On September 15, 1977, the Industrials petitioned the district court for an order to show cause why a judgment of contempt should not be entered against the Commission and Southwest for failure to obey the district court's order of April 7, 1977. At the contempt hearing, McCrea testified that when the Commission issued its Order in Erratum, Southwest removed the refunds omitted in the original order of January 14, 1973, ($972,000) from its retained earnings account and placed that sum in a deferred account and amortized it to utility revenues at a rate of 1/60th a month. McCrea further testified that when the district court vacated the Order in Erratum on April 7, 1977, Southwest once again credited the $972,000 in refunds to its retained earnings account. Long after the hearing on the motion to show cause, the district court filed its findings of fact, conclusions of law and judgment of contempt. The lower court found McCrea and Southwest in contempt of the court's order dated April 7, 1977, and granted them an opportunity to purge themselves of contempt by refunding the retained refunds. The Commission was found not to be in contempt. A motion filed by Southwest to amend and supplement the findings of fact, conclusions of law and judgment of contempt and to obtain a written decision of the district court was denied. Southwest and McCrea appealed from the order denying Southwest's motion to amend and supplement.

The lower court concluded that, although Southwest was able to comply with the district court's order of April 7, 1977, and the Commission's compliance order of May 3, 1977, it failed to do so by refusing to make the refunds. Appellants, however, contend that since no part of the district court's order directed either Southwest or McCrea .to do or refrain from doing any act, the lower court erred in holding them in contempt. Respondents argue that a violation of a court's order may be punished by contempt although the party charged with such violation was not a party to the proceedings, so long as the contemnor had actual notice of the court's order.[2] Respondents contend that this court, in Ex Rel. Cameron v. District

---

[2]Respondents also cite In re Lennon, 166 U.S. 548 (1896), in support of this proposition. *Lennon,* however, is readily distinguished. There, the court order underlying the contempt proceeding specifically enjoined all "defendants, their officers, agents, servants and employees . . . from refusing, *[inter alia,]* to extend to [certain railroad companies] the same facilities for an interchange of interstate business between the companies as were enjoyed by other railway companies . . . ." *Lennon,* 166 U.S. at 550. In the present case, the district court's order of April 7, 1977, does not specifically direct the appellants to take or refrain from any acts. *Lennon,* therefore, is inapposite.

Court, 48 Nev. 198, 228 P. 617 (1924), ruled that if the contemnor appears and contests the motion to show cause, the judgment will stand even though the court's order which the contemnor disobeyed does not name or direct the contemnor to take or refrain from any acts. Respondents conclude that Southwest and McCrea can be cited for contempt even though they were not specifically directed to do or refrain from any acts by the district court's April 7, 1977, order.

*Cameron,* however, suggests that the court's authority to summarily enforce its order for the surrender of property against a non-party arises from the court's power to appoint a receiver. *Id.* at 201, 228 P. at 617-618. In Bowler v. Leonard, 70 Nev. 370, 269 P.2d 833 (1954), we clearly stated that the duty of a non-party "to deliver [the property] results from the appointment of the receiver and not from independent action or restraint enjoined upon the [alleged contemnors]." *Id.* at 386-387, 269 P.2d at 841. Because the present case does not concern the appointment of a receiver, *Cameron* is inapplicable.

 

Generally, an order for civil contempt must be grounded upon one's disobedience of an order that spells out "the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed on him." Ex Parte Slavin, 412 S.W.2d 43, 44 (Tex. 1967). *See, e.g.,* Schiselman v. Trust Company Bank, 271 S.E.2d 183 (Ga. 1980); Hargis v. Fleck, 157 N.W.2d 103 (Iowa 1968). *See also* L.A.M. v. State, 547 P.2d 827 (Alaska 1976); Caplow v. District Court, 72 Nev. 265, 302 P.2d 755 (1956). The district court's April 7, 1977, order does not specifically direct Southwest or McCrea to do anything. No part of the district court's order was directed to either Southwest or McCrea, even though the Industrials had prayed for relief against Southwest. The April 7, 1977, order directs the *Commission* to issue an order requiring the appellants to comply with the Commission's original order issued on January 14, 1973. We believe that enforcement of the instant judgment of contempt would violate the general rule that the order upon which the judgment of contempt is grounded must be clear and unambiguous. *See, e.g.,* Ex Parte Padron, 565 S.W.2d 921 (Tex. 1972).

 

Moreover, the Commission's compliance order of May 3, 1977, which directed action on the part of Southwest, cannot

provide the basis of a judgment of contempt. Appellants persuasively argue that, at least in the first instance, the Industrials' remedies lay with an application to the Commission for enforcement of its compliance order under NRS 704.600-.645. NRS 704.630 provides that "[i]n addition to all the other remedies provided by [Chapter 704] for the prevention and punishment of any and all violations of . . . all orders of the Commission, the *Commission* may compel compliance with the . . . orders of the Commission by proceedings in mandamus, injunction or by other civil remedies." (Emphasis added.) After McCrea reported to the Commission on the disposition of the disputed refunds, the Industrials petitioned the Commission for "declaratory relief," pursuant to NRS 233B.120. There, the Industrials contended the district court's April 7, 1977, order required the Commission to issue an additional order directing Southwest to distribute *all* refunds from El Paso, including the $972,000 which Southwest re-credited to its retained earnings account following the vacation of the Order in Erratum. The Commission denied the petition on July 15, 1977. Had the Commission, at that time, believed that Southwest had violated its compliance order by not distributing those refunds which were amortized to utility revenues, pursuant to the amendatory orders and the Order in Erratum, the *Commission* could have sought enforcement by proceedings in mandamus, injunction or other civil remedies. In the context of this case, under Chapter 704, however, the Industrials did not have standing to petition the district court for an order to show cause why Southwest should not be held in contempt of the Commission's compliance order.[3]

Accordingly, the judgment of contempt for Southwest's and McCrea's alleged violations of the district court's April 7, 1977, order and the Commission's May 3, 1977, compliance order is reversed.

SPRINGER, MOWBRAY, STEFFEN, and GUNDERSON, JJ., concur.

---

[3]"Like most public boards and commissions, public service commissions are generally creatures of statute, . . . [and possess] no inherent power; all its power and jurisdiction, and the nature and extent of the same, must be found within the statutory or constitutional provisions creating it." 1957 Attorney General's Opinion No. 326 at 275. Orders issued by such a body are attributed only those powers as are granted by the legislature. Correspondingly, the scope of such an order may be circumscribed by the legislature. In the present case, the legislature has charged the *Commission,* not utility customers, with the power of enforcing its orders. NRS 704.630.