*852 OPINION

Per Curiam.:

On August 11, 1993, respondents Victor Albanese and Mary Albanese (“the Albaneses”), doing business as Marval Business Services (“Marval”), filed a complaint in the district court for declaratory relief against appellants State of Nevada, Department of Industrial Relations (“the Department”), Division of Industrial Insurance Regulation (“DIIR”), and James Jeppson, in his capacity as Administrator of DIIR. The complaint sought a declaratory judgment that Marval was discharged from securing a third-party administrator’s license pursuant to NRS 683A.385 to process subsequent injury fund claims on behalf of self-insured employers. In addition to attorney’s fees and costs, Marval’s complaint also sought a declaratory judgment requiring DIIR to comply with certain statutes and regulations set forth in NRS and NAC.
On August 13, 1993, the district court entered a temporary restraining order (“TRO”) directing appellants to refrain from refusing to accept subsequent injury fund claims submitted by Marval on behalf of its clients. On January 3, 1994, the district court issued a preliminary injunction which essentially incorporated the terms of the TRO.
On August 5, 1994, the Albaneses filed a motion for order to show cause requesting that appellants be required to appear before the district court and show cause why they should not be held in contempt of court for failing to comply with the preliminary injunction. On March 29, 1995, several months after a hearing was held on the motion, the district court entered its order holding appellants in contempt and awarded the Albaneses their attorney’s fees and costs.
After their motion for reconsideration was denied, appellants appealed, arguing that (1) the district court erred in determining that appellants violated the preliminary injunction; and (2) the district court erred by awarding the Albaneses their attorney’s fees and costs as sanctions. We conclude that appellants’ first argument has merit, and we reverse the district court’s order which held that appellants had violated the terms of the preliminary injunction. Accordingly, we also reverse the district court’s sanction award. Because we have concluded that appellants’ first argument on appeal has merit, it is unnecessary for us to consider appellants’ second argument in this opinion.

*853
FACTS

Marval operated a specialized business in the field of workers’ compensation devoted solely to the processing of subsequent injury fund claims for self-insured employers under Chapter 616 of NRS and NAC. According to the Albaneses, before they formed Marval, they met with several employees at DIIR regarding their intent to form a business which processed subsequent injury fund claims for self-insured employers. The Albaneses allege that they were assured by DIIR’s employees that DIIR would not require Marval to obtain a third-party administrator’s license or object to Marval’s plan to process subsequent injury fund claims on behalf of self-insured employers.[1]
On July 7, 1993, Jeppson wrote the Albaneses a letter explaining that Marval’s requests for reimbursement from the subsequent injury fund which had been submitted on behalf of self-insured employers were being denied because Marval was not a licensed third-party administrator. Specifically, relying upon NRS 616.299(2) (now NRS 616B.500), Jeppson wrote that “[ajcting on behalf of a self-insured employer concerning the preparation and submission of subsequent injury claim files is beyond the scope of your current license. Only the insurer or a properly licensed third-party administrator may perform any of the functions required pursuant to NRS 616.427 or NRS 616.428.”
On August 11, 1993, the Albaneses filed a complaint for declaratory relief against appellants. On this same day, the Albaneses also filed an application for a TRO with the district court. On August 13, 1993, after hearing oral arguments, the district court granted the Albaneses’ application for a TRO.
On September 16, 1993, after a lengthy hearing, the district court granted the Albaneses’ request for a preliminary injunction and denied appellants’ motion to dismiss.[2] The preliminary *854 injunction provided that appellants were enjoined and restrained from the following:
(a) Refusing to accept notification from Marval of possible claims against the subsequent injury fund without Marval having first obtained a third-party administrator’s license;
(b) Refusing to accept subsequent injury fund claims submitted by Marval on behalf of self-insured employers without Marval having first obtained a third-party administrator’s license pursuant to NRS 683A.085;
(c) Refusing to timely process subsequent injury fund claims submitted by Marval on behalf of self-insured employers without Marval having first obtained a third-party administrator’s license pursuant to NRS 683A.085;
(d) Refusing to forward to Marval, in a timely manner, checks made payable to self-insured employers for accepted subsequent injury fund claims submitted by Marval on behalf of its clients; and
(e) Interfering with contracts between Marval and its clients in the processing of subsequent injury fund claims with the DIIR.
The preliminary injunction further provided that “[djisobedience of this Injunction is punishable by contempt.”
On August 5, 1994, after several of the Albaneses’ claims for reimbursement had been denied by appellants, the Albaneses filed a motion for an order to show cause. The motion requested that appellants be ordered to appear before the district court to show cause why they should not be held in contempt for failing to comply with the terms of the preliminary injunction. The district court issued an order to show cause, and a hearing was held before the district court on December 15, 1994.
On March 29, 1995, the district court issued its decision and order regarding the Albaneses’ motion to show cause. In its decision and order, the district court stated that “[t]he Department deliberately stalled, stonewalled and misrepresented its internal records and its capacity to machine generate printouts of those records to both [the Albaneses’] counsel and to the Court.” Additionally, the district court found that “the Department deliberately delayed notifying Marval that it was denying all of its claims.” Furthermore, the decision and order stated that “[t]he Court is further under the impression that somehow after the Temporary Restraining Order went into effect that Marval claims which had initially been approved for acceptance and payment were disallowed by supervisors which ultimately resulted in a denial of all seven claims submitted by Marval for the Showboat *855 Hotel.” Also, the district court found that “the Department set its course on deliberately making all Marval claims jump through all the hoops, including requiring Marval to go through administrative hearing and appeals processes.”
Accordingly, the district court found
[t]he Department, through its prior Administrator [Jeppson], in contempt of Court for deliberately misrepresenting its records availability, for deliberately denying all Marval claims which required Marval to appeal the same and therefore ran up not only Marval’s costs and decreased its profits, but also ran up significant costs to the self-insured employer. The Department has achieved its original goal of putting Marval out of the business of reviewing claims for submission to the subsequent injury fund.
As a consequence of its contempt finding, “by way of sanctions, the Court assesse[d] the Department the sum of $9,252.67 as and for Marval’s share of attorney’s fees incurred in its six successful appeals of [appellant’s] denial of claims. The Court further award[ed] Marval all of its attorney fees involved in its litigation . . . .”
The district court subsequently denied appellants’ motion for reconsideration and clarified and amended its earlier judgment. In clarifying its earlier judgment, the district court stated:
It is hereby Ordered that [the Albaneses’] counsel prepare an Amended Judgment for Sanctions which specifically and more clearly provides, in conformance with the Court’s original intent, that the sanctions amount in this contempt proceeding shall include Marval’s costs relative to both this action as well as its share of the six (6) IIRS appeals, and that the sanctions imposed upon the [appellants] by the Court are measured by reference to the amount of attorney’s fees and costs expended by Marval and that such judgment for sanctions is not therefore an award of attorney fees and costs ....
The district court’s amended judgment for sanctions awarded the Albaneses $63,314.49.[3]

*856
DISCUSSION

Standard of review

In Young v. Johnny Ribeiro Building, 106 Nev. 88, 92, 787 P.2d 777, 779 (1990), we indicated that district judges are afforded broad discretion in imposing sanctions. The Young court stated that “this court will not reverse the particular sanctions imposed absent a showing of abuse of discretion.” Id. Accordingly, the issue presented in the instant case is whether the district court abused its discretion by imposing the particular sanctions at issue on appellants.

Contempt sanctions in the case at bar

We have previously stated that “[gjenerally, an order for civil contempt must be grounded upon one’s disobedience of an order that spells out ‘the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed on him.’ ” Southwest Gas Corp. v. Flintkote Co., 99 Nev. 127, 131, 659 P.2d 861, 864 (1983) (quoting Ex Parte Slavin, 412 S.W.2d 43, 44 (Tex. 1967)).
The United States Court of Appeals for the Ninth Circuit has succinctly stated the rationale and scope of civil contempt sanctions. See In re Crystal Palace Gambling Hall, Inc., 817 F.2d 1361 (9th Cir. 1987). In In re Crystal Palace Gambling Hall, the court stated that
a sanction for “[cjivil contempt is characterized by the court’s desire to . . . compensate the contemnor’s adversary for the injuries which result from the noncompliance.” Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983). However, an award to an opposing party is limited to that party’s actual loss. United States v. United Mine Workers of America, 330 U.S. 258, 304 (1947); Shuffler v. Heritage Bank, 702 F.2d 1141 (9th Cir. 1983); Falstaff, 702 F.2d at 779.
In re Crystal Palace Gambling Hall, 817 F.2d at 1366.
In the present case, the district court imposed sanctions on appellants totalling $63,314.49. According to the district court, these sanctions were imposed for appellants’ contempt of the district court’s preliminary injunction order. Specifically, the district court found appellants “in contempt of Court for deliberately misrepresenting its records availability, [and] for deliberately denying all Marval claims which required Marval to appeal *857 the same and therefore ran up not only Marval’s costs and decreased its profits, but also ran up significant costs to the self-insured employer.”
The terms of the preliminary injunction at issue essentially provided that appellants could not refuse to process or accept for submission subsequent injury claims submitted by Marval on behalf of its clients. Imposing sanctions on appellants for “deliberately misrepresenting its records availability” and “deliberately denying Marval claims” was not within the purview of the district court’s preliminary injunction. While we refrain from considering whether appellants actually misrepresented their records availability or deliberately denied Marval’s claims, we conclude that appellants were sanctioned for actions which did not constitute disobedience of the clear, specific and unambiguous terms of the preliminary injunction. See Southwest Gas Corp., 99 Nev. at 131, 659 P.2d at 864. Therefore, we conclude that the district court abused its discretion in imposing the sanctions at issue.

CONCLUSION

Having concluded that appellants’ behavior did not violate the specific terms of the preliminary injunction at issue, we need not consider appellants’ remaining issue on appeal. Accordingly, we reverse the $63,314.49 in sanctions levied by the district court in favor of Marval pursuant to appellants’ purported misrepresentation of their records availability and deliberate denial of Marval’s claims.

Pursuant to NRS 616A.335, “‘Third-party administrator’ means a person who is hired by an insurer to provide administrative services for the insurer and manage claims.” In order to operate as a third-party administrator, a person must maintain an office in this state and obtain a valid certificate. See NRS 616B.503.

 Although not essential for our resolution of the issues on appeal, the crux of the district court’s reasoning for granting Marval injunctive relief was that Marval was not a third-party administrator of claims as defined in NRS 616.1165 (now NRS 616A.335). Specifically, the district court noted that Marval provided administrative services to self-insured employers, but did not manage claims. Accordingly, because the definition of third-party administrator required a person to administer and manage claims, the district court held that Marval was not required to obtain a third-party administrator’s license.

This amount was based upon the sum of (a) $9,252.67 expended by Marval for Marval’s share of costs and attorney’s fees incurred in its six appeals of the appellants’ denial of the claims, plus (b) $48,299.50 expended by Marval for Marval’s attorney’s fees in the prosecution of this case against the appellants, plus (c) $5,762.32 expended by Marval for its costs incurred in the prosecution of this case against appellants.