137 Nev., Advance Opinion 18

IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| EDWARD N. DETWILER,<br>Petitioner,<br>vs.<br>THE EIGHTH JUDICIAL DISTRICT<br>COURT OF THE STATE OF NEVADA,<br>IN AND FOR THE COUNTY OF<br>CLARK; AND THE HONORABLE<br>RICHARD SCOTTI, DISTRICT JUDGE,<br>Respondents,<br>  and<br>BAKER BOYER NATIONAL BANK,<br>Real Party in Interest. | No. 81220 |



FILED

MAY 06 2021

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition or, in the alternative, writ of mandamus challenging a district court order sanctioning petitioner for contempt of court.

*Petition granted in part and denied in part.*

Hutchison & Steffen, LLC, and Brenoch R. Wirthlin, Mark A. Hutchison, and Michael K. Wall, Las Vegas,
for Petitioner.

Lewis Roca Rothgerber Christie LLP and John E. Bragonje, Daniel F. Polsenberg, and Abraham G. Smith, Las Vegas,
for Real Party in Interest.

BEFORE THE SUPREME COURT, PARRAGUIRRE, STIGLICH, and SILVER, JJ.

21-12959

*OPINION*

By the Court, STIGLICH, J.:

In this opinion, we examine the appropriate scope of compensatory fines and attorney fees imposed as sanctions in contempt proceedings. We conclude that monetary sanctions payable to the opponent are civil—not criminal—in nature because they serve a remedial purpose. However, these sanctions must be limited to the opponent's actual loss caused by the contemptuous conduct. To the extent such a sanction exceeds the opponent's actual loss, it is invalid. More specifically, an attorney fee award must not include fees that were incurred before the contemptuous conduct began, and an award of other damages must be based on evidence of an actual loss.

Before reaching this central issue, we address two threshold issues. First, we consider the effect of an error in naming a party—here, the erroneous description of a national bank as "a Washington corporation." We hold that where the correct parties are in fact involved and no party is actually misled or prejudiced by the naming error, such an error is purely clerical and the district court may correct it at any time. Second, we address the proper time for an accused contemnor to demand a change of judge under NRS 22.030(3). We hold that such a demand must be made before the contempt trial. Although we need not decide whether any more stringent time limit applies, we encourage litigants to act without undue delay in exercising peremptory challenges to judges.

*FACTS AND PROCEDURAL HISTORY*

Real party in interest Baker Boyer National Bank loaned over $1 million to James Foust, who claimed an extensive classic car collection

SUPREME COURT
OF
NEVADA

(O) 1947A

valued at several million dollars among his assets on his loan application.[1] Foust defaulted on the loan, and in July 2017, the Bank obtained a money judgment against him in Washington State for over $800,000.

Foust did not pay the judgment, and so the Bank began to seek out assets from which it could satisfy the judgment. As the classic car collection was—at least ostensibly—located in Nevada, the Bank applied to this state's district court for enforcement of the judgment. The Bank then moved the district court to require Foust to turn over the cars, or some subset of the cars, to satisfy the judgment under NRS 21.320. Foust opposed the motion. He claimed that he had liquidated his entire collection of cars and had no other assets. The district court was skeptical and ordered Foust to produce concrete evidence that he no longer owned the cars. At an evidentiary hearing, Foust represented that he had sold some of the cars, including a 1998 Prevost Marathon Motorcoach,[2] to Harry Hildibrand, LLC (HH), a Montana limited liability company. He testified that he owned less than one percent of HH. Nevertheless, the court authorized the Bank to seize the Motorcoach from an RV park in Las Vegas. The Motorcoach was the only vehicle that the Bank successfully located.

The court then granted the Bank's motion in full, permitting the Bank to maintain possession of the Motorcoach pursuant to its prior order and ordering Foust to produce all other cars identified in the Bank's motion. As Foust continued to insist that HH owned the Motorcoach, the court ordered Foust to produce evidence that the sale was legitimate. Foust

---

[1]Foust, the defendant below, is not a party to this writ proceeding.

[2]The Motorcoach is not obviously either "classic" or a "car," but the parties have always treated it as part of Foust's classic car collection.

produced only an uncertified photocopy of the Motorcoach's title indicating that HH was the owner. After another hearing, the court found that "no sale actually occurred and that Mr. Foust continues to own" the Motorcoach. It relied on evidence that Foust was not a minority owner of HH, but was in fact its *sole* member. It found Foust's testimony that he had "divested his interest on some uncertain date he could not recall" to be not credible in the face of contradictory documentary evidence. Accordingly, the court found the purported sale was fraudulent and void.

Soon afterwards, in March 2018, HH appeared in the lawsuit for the first time. It claimed a right in the Motorcoach and demanded a hearing to determine title. As NRS 31.070(1) required, the third-party claim included a sworn declaration by HH's manager and agent, petitioner Edward N. Detwiler. Detwiler swore that HH purchased the Motorcoach in early 2017, before the Washington judgment was entered, for approximately $135,000. But the district court denied the third-party claim. The case was then stayed for several months when HH filed for bankruptcy protection in California.

*The Bank obtains an order requiring Detwiler to turn over certain cars*

The California bankruptcy case was eventually dismissed, and the Nevada district court then held a hearing to determine whether HH and Foust were in privity such that HH could be bound by the court's order finding the sale fraudulent. In a January 9, 2019, order (the January turnover order), the court found that, though ostensibly separate, Foust and HH acted under common legal representation coordinated across judicial fora. The court further found that Foust "retained possession or control of the property transferred after the [purported] transfer," indicating the sale was fraudulent. Ultimately, it found that the relationship between Foust and HH "appears to the Court to be a scam for frustrating creditors' claims."

It thus ruled in favor of the Bank on all claims. Crucially, it ordered Foust, HH, and any of their agents, employees, or affiliates—specifically including Detwiler—to turn over the cars on penalty of contempt.

*Detwiler is held in contempt*

The Bank unsuccessfully sought Foust's, Detwiler's, and HH's compliance with the January turnover order. In February 2019, the Bank moved to have Foust, Detwiler, and HH held in civil contempt of court. The court issued an order to show cause and scheduled a hearing. The order warned Foust, Detwiler, and HH that they faced "civil contempt" and noted that their failure to appear could result in a warrant for their arrest.

The hearing lasted four days in April and May 2019. Both Detwiler and Foust testified.[3] Not long after, the court held Foust in contempt. But Foust absconded to California, and the Bank remained unable to secure his compliance. Several months after holding Foust in contempt, the district court announced by minute order that it would hold Detwiler and HH in contempt for refusing to turn over the cars and issued a warrant for Detwiler's arrest. However, the clerk did not enter on the docket the court's written order implementing its minute order, despite the

---

[3]During the hearing, the court excluded Detwiler from the courtroom during some of Foust's testimony. Detwiler argues that this violated his rights, but we conclude that he forfeited this argument. He did not object to his exclusion from the courtroom or ask to cross-examine Foust, and "in the context of extraordinary writ relief, consideration of legal arguments not properly presented to and resolved by the district court will almost never be appropriate." *Archon Corp. v. Eighth Judicial Dist. Court*, 133 Nev. 816, 822, 407 P.3d 702, 708 (2017); *Burgers v. Maiben*, 652 P.2d 1320, 1323 (Utah 1982) (rejecting claim by an accused contemnor who did not ask to confront a witness at the show-cause hearing or claim a violation of his right to confront witnesses below).

written order being signed on December 16, 2019. Three days after signing the written order, the court sua sponte stayed the enforcement of Detwiler's arrest warrant and eventually set a new hearing for late January 2020.

Days before that hearing, Detwiler informed the court that he had resigned as a manager of HH in September, after the contempt hearing but before the court announced it was holding him in contempt. On the day of the January hearing, Detwiler for the first time sought to peremptorily challenge the judge pursuant to NRS 22.030(3). Detwiler argued that this motion was timely since the written contempt order had not been entered. After the hearing that day, the court entered the written contempt order signed on December 16, without modifications. It set a new hearing for February 12 and stayed Detwiler's arrest until then.

Detwiler then moved for relief from the judgment, for reconsideration, and for a new trial. He argued that his resignation as HH's manager made it impossible for him to comply with the order by turning over the cars. He further argued that as the district court had found that Foust owned the cars, it was contradictory to ask HH to turn them over.

At a hearing on the reconsideration motion, the court indicated that it believed Detwiler had been untruthful and that he had, at some point, had the ability to turn over the cars. The court asked the parties to address whether the resignation "convert[ed] this from a civil contempt to criminal contempt" by making it impossible for Detwiler to comply. The court remarked that "if it's no longer civil . . . due process requires . . . a new evidentiary hearing." The court ultimately found that Detwiler had the ability to comply with the court's order, at least until he resigned as manager of HH, and failed to do so. But the court agreed with Detwiler that his resignation now made it impossible for him to comply. As Detwiler could

Supreme Court
of
Nevada

(O) 1947A

6

no longer comply, the district court vacated its order for his arrest. Instead, it ordered him to pay the Bank's attorney fees incurred since HH filed its NRS Chapter 31 third-party claim to the Motorcoach in March 2018. Further, the court imposed an additional fine of $100,000 payable to the Bank, which it explained was a fraction of the cars' value. The fine was not conditional, although the court noted it would be open to reconsideration if the cars were turned over. Detwiler now petitions this court for a writ of mandamus or prohibition, challenging the contempt order.

## DISCUSSION

Where no rule or statute provides for an appeal of a contempt order, the order may properly be reviewed by writ petition. *Pengilly v. Rancho Santa Fe Homeowners Ass'n*, 116 Nev. 646, 649-50, 5 P.3d 569, 571 (2000). "Whether a person is guilty of contempt is generally within the particular knowledge of the district court, and the district court's order should not lightly be overturned." *Id.* at 650, 5 P.3d at 571. Accordingly, this court "normally review[s] an order of contempt for abuse of discretion." *Lewis v. Lewis*, 132 Nev. 453, 456, 373 P.3d 878, 880 (2016). "However, we review constitutional issues de novo." *Id.*

*A mistake in naming a party that causes no prejudice may be corrected by the district court*

Before we reach the merits of the contempt sanctions, we must address two threshold issues. First, Detwiler contends that the Bank "does not exist" and that the judgment in its favor therefore is void. Because a "judgment for a legally nonexistent entity is a nullity," if Detwiler were correct, we would have to order the district court to vacate the judgment and start over. *See Causey v. Carpenters S. Nev. Vacation Tr.*, 95 Nev. 609, 610, 600 P.2d 244, 245 (1979).

Detwiler explains that the original caption of the district court case, including on the judgment against him, identified the Bank as "Baker Boyer National Bank, a Washington corporation." All parties acknowledge this was inaccurate. The Bank is not a Washington corporation, it is a national bank: a "corporate entit[y] chartered not by any State, but by the Comptroller of the Currency of the U.S. Treasury." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306 (2006) (describing national banks). The record shows that the district court has corrected this error by removing the "Washington corporation" designation. Detwiler nevertheless insists that this error—which he identified for the first time in his opposition to a motion for attorney fees, nearly two years after filing his first sworn declaration in this case—voids the judgment. We disagree.

Other state courts have created a framework distinguishing "misnomers" from "misidentifications." A misidentification "arises when two separate legal entities exist and a plaintiff mistakenly sues an entity with a name similar to that of the correct entity." *In re Greater Hous. Orthopaedic Specialists, Inc.*, 295 S.W.3d 323, 325 (Tex. 2009) (citations omitted). In contrast, "[a] misnomer occurs when a party misnames itself or another party, but the correct parties are involved." *Id.*; *see also Hampton v. Meyer*, 847 S.E.2d 287, 290 (Va. 2020) (distinguishing between misnomers and misjoinder). "Courts generally allow parties to correct a misnomer so long as it is not misleading." *Hous. Orthopaedic*, 295 S.W.3d at 325. We adopt this analysis. Where the correct parties are involved and the error is not misleading, a misnomer amounts to nothing but a typographical or clerical error, which may be corrected "whenever one is found in a judgment, order, or other part of the record." NRCP 60(a).

The first issue is whether the correct parties are involved. In this regard, this case is distinguishable from *Causey v. Carpenters Southern Nevada Vacation Trust*, where a group of trusts sued and won summary judgment. We reversed because "[i]t is the trustee, or trustees, rather than the trust itself that is entitled to bring suit." 95 Nev. at 610, 600 P.2d at 245; *see Nelson v. Eighth Judicial Dist. Court*, 137 Nev., Adv. Op. 14, ___ P.3d ___, ___ (April 1, 2021) (explaining that a trust is "a party to a lawsuit *through its trustee*" (emphasis added)). In other words, the caption *should* have referred to the trustees but instead referred to the trusts. But here, the caption has only ever referred to a single entity: the Bank, albeit mistakenly described as a Washington corporation. The "correct parties are involved," *Hous. Orthopaedic*, 295 S.W.3d at 325, and all of them have the capacity to sue and be sued. The error was, therefore, only a misnomer.

The next question is whether the misnomer was misleading. The Texas Supreme Court has recognized that when "the plaintiff misnames itself, the rationale for flexibility in the typical misnomer case—in which a plaintiff misnames the defendant—applies with even greater force," as the likelihood of confusion is low. *Id.* at 326. Here, Detwiler has not explained how including "a Washington corporation" in the caption misled or prejudiced him. To the contrary, he participated without apparent confusion for nearly two years before drawing the error to the court's attention. We conclude the error was not misleading. The district court did not err by amending the caption and is not required to vacate its judgment on this ground.

SUPREME COURT
OF
NEVADA

(O) 1947A

*Detwiler waived a peremptory challenge to the judge*

Detwiler next argues that the trial judge erred by failing to recuse himself after Detwiler objected. We disagree. Detwiler could have sought the trial judge's recusal at an earlier date, but he waived his right to do so by waiting until months after the trial.

Under NRS 22.030(3), an accused contemnor may file a "peremptory challenge" objecting to the judge who entered the order allegedly violated from also presiding over the contempt hearing. The objection should be granted automatically if it is "timely and properly made." *Awad v. Wright*, 106 Nev. 407, 410, 794 P.2d 713, 715 (1990), *abrogated on other grounds by Pengilly*, 116 Nev. at 649, 5 P.3d at 571. This statute recognizes that there is at least some potential for the appearance of bias when a judge tries an alleged contemnor for contempt of *that very judge*. *See id.* (citing *McCormick v. Sixth Judicial Dist. Court*, 67 Nev. 318, 331-32, 218 P.2d 939, 945 (1950)).

However, timeliness is essential, as "[g]rounds for disqualifying a judge can be waived by failure to timely assert such grounds." *City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 651, 940 P.2d 134, 139 (1997). When a litigant has reason to call for a judge's recusal, the litigant "'may not lie in wait' and raise those allegations in a motion 'only after learning the court's ruling on the merits.'" *Snyder v. Viani*, 112 Nev. 568, 573, 916 P.2d 170, 173 (1996) (quoting *Ainsworth v. Combined Ins. Co.*, 105 Nev. 237, 260, 774 P.2d 1003, 1019 (1989)). That rule has special force when the challenge is peremptory, as the availability of the challenge is automatically known to the alleged contemnor as soon as he or she receives the order to show cause.

NRS 22.030(3) contains no express deadline but simply says that "if a contempt is not committed in the immediate view and presence of

SUPREME COURT
OF
NEVADA

(O) 1947A

the court, the judge of the court in whose contempt the person is alleged to be shall not preside at the trial of the contempt over the objection of the person." Here, by the time Detwiler objected in January 2020, Judge Richard Scotti had *already presided* over the contempt hearing. Before the hearing, Detwiler had a right to object to Judge Scotti presiding, but he did not do so. Nothing indicates that such an objection may be retroactively made after the trial, and we hold that it may not. This aligns with the general peremptory challenge rule in civil actions providing that, while a litigant may peremptorily challenge a judge up to 10 days after notification of the trial date, SCR 48.1(3)(a),[4] such a challenge is unavailable after the judge "has made any ruling on a contested matter or commenced hearing any contested matter in the action," SCR 48.1(5). This rule ensures that peremptory challenges are not used as a reaction to an unfavorable ruling on the merits.

*The district court did not abuse its discretion by holding Detwiler in contempt*

Detwiler next argues that the contempt order, as a whole, was invalid. He contends that it was based on a self-contradictory order and on an unconstitutional alter-ego finding. We disagree on both points.

First, Detwiler argues that the January turnover order fails to spell out "the details of compliance in clear, specific and unambiguous terms," relying on *Southwest Gas Corp. v. Flintkote Co.*, 99 Nev. 127, 131, 659 P.2d 861, 864 (1983) (internal quotation omitted), to assert that unclear or ambiguous orders cannot be enforced. He contends that the district

---

[4]Because Detwiler's objection was not filed until long after the trial was held and was therefore untimely under any possible standard, we have no occasion to decide whether NRS 22.030(3) incorporates any time limit stricter than SCR 48.1(5).

court's orders, taken together, are contradictory and confusing because they found that Foust owned the cars but also ordered Detwiler to turn over the cars. We reject this argument. Unlike the order in *Southwest Gas*, which "d[id] not specifically direct [appellants] to do anything," *id.*, the order here clearly and unambiguously directed Foust, HH, and Detwiler to turn over the cars. There is no logical contradiction in the district court's finding that while Foust owned the cars—so they were properly subject to the Bank's levy under NRS 21.320—HH and Detwiler shared some level of control over the cars. The district court found, as a factual matter, that Detwiler had the ability to comply with the order and did not. Our review of the record reveals no abuse of discretion in that factual finding. *Lewis*, 132 Nev. at 456, 373 P.3d at 880.

Detwiler also argues that the district court improperly found an alter-ego relationship between Foust and HH without an "independent action against the alleged alter ego with the requisite notice, service of process, and other attributes of due process." *Callie v. Bowling*, 123 Nev. 181, 185, 160 P.3d 878, 881 (2007). We reject this attempt to stretch *Callie* far beyond its actual scope. Even if the district court did make an alter-ego finding—which is far from clear—due process would not be violated because HH entered this lawsuit of its own volition. Unlike the appellant in *Callie*, who was simply added to a judgment against his company without notice, HH had "notice, discovery, and an opportunity to be heard before potentially being found liable." *Id.* at 185, 160 P.3d at 881; *see DeMaranville v. Emp'rs Ins. Co. of Nev.*, 135 Nev. 259, 268, 448 P.3d 526, 534 (2019) (distinguishing *Callie* where the complaining party received notice and "participated in its own capacity" in the litigation).

*Compensatory sanctions for contempt are civil, not criminal*

We now turn to Detwiler's argument that the district court issued criminal sanctions against him without adhering to constitutionally required procedural safeguards such as the right to counsel, the right to confrontation, the right to a jury trial, and the right to proof of all elements of the crime beyond a reasonable doubt. We conclude that monetary sanctions should be treated as civil if they are payable to the opponent. To be sure, as discussed in the next section, a fine payable to the opponent may be invalid if it does not compensate the opponent for an actual loss. But it should still be analyzed as a civil penalty, not a criminal one.

We must acknowledge at the outset that "[c]ontempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized as *sui generis*, and may partake of the characteristics of both." *Warner v. Second Judicial Dist. Court*, 111 Nev. 1379, 1382, 906 P.2d 707, 709 (1995) (quoting *Marcisz v. Marcisz*, 357 N.E.2d 477, 479 (Ill. 1976)). Nevertheless, it remains important to classify contempt sanctions as civil or criminal, because "criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994) (internal quotation marks omitted); *see City Council of Reno v. Reno Newspapers, Inc.*, 105 Nev. 886, 893-94, 784 P.2d 974, 979 (1989).

"[W]hether a contempt is civil or criminal turns on the 'character and purpose' of the sanction involved. Thus, a contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.'" *Bagwell*, 512 U.S. at 827-28 (quoting *Gompers v.*

*Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). The United States Supreme Court has further explained as follows:

> The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if "the defendant stands committed unless and until he performs the affirmative act required by the court's order," and is punitive if "the sentence is limited to imprisonment for a definite period." [*Gompers*, 221 U.S. at 442.] *If the relief provided is a fine, it is remedial when it is paid to the complainant*, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.

*Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 631-32 (1988) (emphasis added). *Hicks* sets forth a "straightforward rule" that is clear, simple, and easy to apply: contempt fines payable to the opponent are treated as civil.

Of course, the fine must in fact serve a remedial purpose to be a *valid* civil sanction. To be remedial, an unconditional fine must be compensatory. *See Bagwell*, 512 U.S. at 829 (explaining that "[w]here a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge"). To be sure, a court might order a contemnor to pay the complainant an amount that is, in fact, punitive and not compensatory. But that would not make the sanction a *criminal* sanction; rather, it would make it an *invalid* sanction. *See H.K. Dev., LLC v. Greer*, 32 So. 3d 178, 184-85 (Fla. Dist. Ct. App. 2010) (holding that sanctions payable to a private party cannot be construed as criminal and thus are "lawful only insofar as they compensate the private party litigant for damages the contumacious conduct caused"). Conversely, "when the act is punished as a criminal

SUPREME COURT
OF
NEVADA

(O) 1947A

14

contempt, the court has no power to impose a fine the purpose of which is to punish but which in fact inures to the benefit of a private litigant." *Horn v. Dist. Court*, 647 P.2d 1368, 1378 (Wyo. 1982). Rather, that fine must "of necessity inure to the benefit of the court and the state." *Id.*; *accord Englander Co. v. Tishler*, 139 N.Y.S.2d 707, 709 (App. Div. 1955); *In re Whitmore*, 35 P. 524, 529 (Utah 1894); 17 C.J.S. *Contempt* § 183 (2020). Accordingly, we follow the United States Supreme Court in *Hicks* and hold that a contempt sanction payable to the opponent is necessarily civil.

Detwiler contends that this conclusion is at odds with our holding in *Lewis v. Lewis*, where we held that "in order for a contempt order imposing a determinate sentence to be civil in nature, it must contain a purge clause . . . [which] gives the defendant the opportunity to purge himself of the contempt sentence by complying with the terms of the contempt order." *Lewis*, 132 Nev. at 457, 373 P.3d at 881 (citing *Hicks*, 485 U.S. at 640). We disagree. *Lewis* applied the same framework as we have here: a sanction is criminal if punitive, and civil if remedial. *Id.* at 457, 373 P.3d at 880 (citing *Rodriguez v. Eighth Judicial Dist. Court*, 120 Nev. 798, 804-05, 102 P.3d 41, 45-46 (2004)). There, we concluded that an order of *incarceration* must contain a purge clause to be civil. Incarceration remedies the contempt by coercing compliance. A purge clause incentivizes compliance, and thereby ensures that incarceration serves its remedial purpose. Conversely, if the defendant has "no way to purge his sentence to avoid or get out of jail," *see id.* at 458, 373 P.3d at 881, then the incarceration fails to incentivize any action and can have no purpose but punishment.[5]

---

[5]Consequently, the district court was right to be concerned about incarcerating Detwiler when he no longer had the ability to comply. *See*

Monetary sanctions, however, do not fall neatly into *Lewis*'s dichotomy. Unlike incarceration, they can serve a compensatory purpose that is neither punitive nor coercive. Like tort damages, compensatory contempt sanctions serve to make the innocent party whole. *See Lyon v. Bloomfield*, 247 N.E.2d 555, 559 (Mass. 1969). Whereas a coercive sanction must be conditional, compensatory sanctions are unconditional, as the damage is already done. Even if Detwiler belatedly complied with the order and turned over the cars, the Bank would still have to pay its attorney fees.

Compensatory sanctions are clearly "remedial" and therefore civil. *Bagwell*, 512 U.S. at 829. Thus, we conclude that *Lewis*, like *Bagwell*, did not affect "the longstanding authority of judges . . . to enter broad compensatory awards for all contempts through civil proceedings." *Id.* at 838. *Lewis*'s holding that "a contempt order that does not contain a purge clause is criminal in nature," 132 Nev. at 455, 373 P.3d at 879, applies to orders of incarceration and to fines payable to the government. *See Hicks*, 485 U.S. at 632 (explaining that fines payable to the government are punitive unless they contain a purge clause). If such a sanction is unconditional, it must be attended by criminal due process.[6] But the *Lewis*

---

*King v. Dep't of Social & Health Servs.*, 756 P.2d 1303, 1310 (Wash. 1988) (citing *Maggio v. Zeitz*, 333 U.S. 56, 72 (1948)).

[6]This opinion pertains to indirect, out-of-court contempt—specifically, Detwiler's disobedience of the January turnover order. Nothing in this opinion should be read to affect the court's authority to impose summary sanctions for direct contempt under NRS 22.030(1). "Direct contempts that occur in the court's presence may be immediately adjudged and sanctioned summarily, and, except for serious criminal contempts in which a jury trial is required, the traditional distinction between civil and criminal contempt proceedings does not pertain." *Bagwell*, 512 U.S. at 827 n.2 (citations omitted); *see also Houston v. Eighth Judicial Dist. Court*, 122 Nev. 544, 553,

SUPREME COURT
OF
NEVADA

(O) 1947A

rule does *not* apply to fines that are payable to the contemnor's opponent, including attorney fees under NRS 22.100(3). Instead, we hold that contempt sanctions payable to the opponent cannot be construed as criminal. *H.K. Dev.*, 32 So. 3d at 184-85. They are civil, and the only question is whether they were validly imposed as civil fines.

*Civil sanctions are limited to the opponent's actual loss resulting from the contempt*

Of course, our conclusion that contempt sanctions payable to the complainant are civil does not mean that all such sanctions are automatically permissible. The contemnor may still challenge the amount of the fine. In particular, if an unconditional fine compensates for a party's loss, then it "is limited to that party's *actual* loss." *State, Dep't of Indus. Rel. v. Albanese*, 112 Nev. 851, 856, 919 P.2d 1067, 1071 (1996) (emphasis added) (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366 (9th Cir. 1987)); *see Hanshaw v. Hanshaw*, 55 So. 3d 143, 147 (Miss. 2011) ("[B]ecause civil contempt vindicates a private party's rights, the imposed sanction should not exceed the injured party's damages and expenses."). Such a fine compensates for a loss "incurred *because of* the contempt." *In re Water Rights of the Humboldt River*, 118 Nev. 901, 909, 59 P.3d 1226, 1231 (2002) (emphasis added); *see also* NRS 22.100(3) (authorizing the district court to require a contemnor to pay "reasonable expenses, including . . . [those] incurred by the party as a result of the contempt").

---

135 P.3d 1269, 1274 (2006) ("When faced with disruptive, contemptuous conduct during court proceedings, a judge must have the power to restore order immediately by issuing a verbal contempt order.").

Here, the sanctions were divisible into two parts: the attorney fee award and the additional $100,000 fine. Detwiler argues that the attorney fee award must be reduced on two grounds: first, that the fees ought to have been apportioned between him and Foust, who was also in contempt of court; and second, that the award is overbroad because it includes fees incurred before he was ordered to do anything.[7] He further argues that the $100,000 fine did not compensate for any actual loss. We address these contentions below.

*All contemnors may be jointly liable for fees resulting from their contemptuous conduct*

Detwiler argues that the district court erred by failing to apportion attorney fees between himself and Foust. He relies on *Mayfield v. Koroghli*, 124 Nev. 343, 184 P.3d 362 (2008). There, we held that when awarding costs, the district court must "attempt to apportion the costs" among multiple defendants. *Id.* at 353, 184 P.3d at 369. If the district court determines that apportionment is impracticable, it "must make specific findings" as to why. *Id.* at 353-54, 184 P.3d at 369. Detwiler argues that the district court made no attempt to apportion the attorney fees between himself and Foust and consequently made no findings, violating *Mayfield*.

We hold that *Mayfield* is inapplicable to a contempt order. That case dealt with an ordinary award of costs to a prevailing party, which is

---

[7]Detwiler further urges that the fee order is invalid in its entirety because the district court's order awards fees from the time HH "intervened as a party in this action pursuant to NRS Chapter 31." Detwiler appears to argue that "intervened" necessarily means intervention under NRCP 24, and so the order is simply meaningless. We reject this argument, as we have no difficulty understanding that the district court's order requires Detwiler to pay the Bank's fees from the time HH filed its NRS 31.070 application—i.e., March 2, 2018.

SUPREME COURT
OF
NEVADA

(O) 1947A

18

often available as of course with no showing of wrongful litigation conduct. NRS 18.020. In contrast, a contempt sanction is more like a remedy for an intentional tort. *See Lyon*, 247 N.E.2d at 559; 17 C.J.S. *Contempt* § 180 (2020). Intentional tortfeasors are generally jointly and severally liable for the entire injury and cannot take advantage of pure several liability or the right of contribution. *See* NRS 17.255; NRS 41.141(5)(b); *Café Moda LLC v. Palma*, 128 Nev. 78, 79, 272 P.3d 137, 138 (2012) (holding intentional tortfeasor liable for 100 percent of the damages and negligent tortfeasor liable for 20 percent of the damages). Analogously, where the district court finds that a party has incurred attorney fees as a result of multiple contemnors' concerted conduct, each contemnor may be liable for the full amount.

*Attorney fees are available only for the period of actual contempt*

We turn now to Detwiler's argument that the district court impermissibly awarded fees that the Bank incurred before the entry of the order he was found to have disobeyed. We have not previously considered the scope of attorney fees recoverable under NRS 22.100(3). But the statute's text provides significant guidance. The fees must not only be "reasonable"—which implicates our usual attorney fee reasonableness analysis, *see Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349-50, 455 P.2d 31, 33 (1969)—but must also be incurred "as a result of the contempt." NRS 22.100(3). The word "result" indicates that the fees must "proceed or arise as a consequence, effect, or conclusion" of the contempt. *Result, Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/result (last visited April 13, 2021). Therefore, NRS 22.100(3) incorporates a causation requirement: fees may be awarded if they were incurred because of the contemptuous conduct. Clearly, disobedience of an order cannot "cause" fees incurred before the disobedience began, and we

SUPREME COURT
OF
NEVADA

(O) 1947A

19

therefore hold that those fees are not recoverable as compensation under NRS 22.100(3). *See S.E.C. v. Bilzerian*, 641 F. Supp. 2d 16, 20 (D.D.C. 2009) (recognizing that fees incurred before contemptuous conduct began are not recoverable); *see also Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148-49 (9th Cir. 1983) (explaining that a contempt fine may only be imposed for "losses resulting from the period of actual contempt," not after the contempt ends); *cf. Nev. Power Co. v. Fluor Ill.*, 108 Nev. 638, 646-47, 837 P.2d 1354, 1360 (1992) (holding that NRCP 37(b), the discovery sanctions rule, "limits an award of attorneys' fees to those incurred because of the alleged failure to obey the particular order in question" and reversing an order awarding "*all* attorneys' fees and costs").

In addition to its statutory authority, the district court also relied on EDCR 7.60(b)(5), which permits a district court to "impose upon an attorney or a party any and all sanctions which may, under the facts of the case, be reasonable, including the imposition of . . . attorney's fees when an attorney or a party without just cause . . . [f]ails or refuses to comply with any order of a judge of the court." Unlike NRS 22.100(3), the text of EDCR 7.60(b) does not contain an express causation requirement. Instead, it requires the sanction to be reasonable under the facts of the case. However, we conclude that in the context of a sanction for contempt based on the violation of a specific order, it is reasonable to impose only those fees that are directly caused by the particular "fail[ure] or refus[al] to comply." This harmonizes the rule with the statute and is consistent with our caselaw holding that fees awarded under the court's inherent authority as a sanction

Supreme Court
of
Nevada

(O) 1947A

for contempt must have been incurred "because of the contempt." *See Humboldt River*, 118 Nev. at 909, 59 P.3d at 1231.[8]

Here, the district court ordered Detwiler to pay all of the Bank's attorney fees from "the time that HH intervened as a party in this action pursuant to NRS Chapter 31," which was on March 2, 2018. The Bank calculated its fees based on this date. However, the district court found Detwiler and HH in contempt for violating a specific court order—the January turnover order. *See* NRS 22.010(3).[9] We hold that the fees incurred prior to January 9, 2019, were improperly awarded.

*The district court abused its discretion by imposing an additional $100,000 sanction*

We turn finally to the additional $100,000 fine that the district court imposed. As explained above, because the award was made payable to the Bank and was unconditional, it was a compensatory award that is "limited to that party's actual loss." *Albanese*, 112 Nev. at 856, 919 P.2d at 1071 (internal quotation omitted). The Bank argues that the district court

---

[8]Because we conclude EDCR 7.60(b) does not authorize attorney fees in excess of those authorized by NRS 22.100(3), we need not reach Detwiler's argument that EDCR 7.60(b) does not authorize sanctioning him because he is not a party. We further note that although the district court also cited NRS 21.340, that statute simply does not apply in a case, like this one, that does not involve a master.

[9]The Bank argues that the contempt order was partially based on Detwiler's lying under oath, which began when he filed a false declaration on HH's behalf in March 2018. We disagree. The district court's finding that Detwiler lied under oath was the basis for the court's conclusion that Detwiler had the *ability* to comply with the order, despite his sworn statements to the contrary. But it was Detwiler's refusal to comply—not his lying—that the court found contemptuous. *Cf.* NRS 22.010 (not listing lying, without more, as a ground for contempt); *see generally* Annotation, *Perjury or False Swearing as Contempt*, 89 A.L.R.2d 1258 (1963).

loosely based the $100,000 fine on the value of the cars and, therefore, the fine should be considered partial compensation for the Bank's "loss" due to Detwiler's failure to turn over the cars.

We disagree. The Bank conflates Detwiler's contempt with Foust's failure to pay the underlying judgment. The Bank still has its judgment against Foust and may still enforce it. To be sure, Detwiler's contemptuous conduct *delayed* the Bank's enforcement efforts, forcing the Bank to incur additional fees. But the Bank will be compensated for that through the fee award. If Detwiler were required to pay for the "loss" of the cars and the Bank were *also* permitted to collect the underlying judgment from Foust, the Bank would obtain a $100,000 windfall. Accordingly, there was no evidence that the Bank suffered an actual loss (other than its attorney fees) from Detwiler's contemptuous conduct, and the district court abused its discretion by awarding noncompensatory "compensation."

## CONCLUSION

We hold that a contempt sanction requiring the contemnor to pay money to the complainant is civil in nature. Such a sanction, if unconditional, is limited to the complainant's actual damages caused by the contempt. Here, the district court did not abuse its discretion by holding Detwiler in contempt and did not impose a criminal sanction. But it did improperly require him to pay attorney fees incurred before his contempt began and order him to pay an additional $100,000 fine untethered to any actual loss. Accordingly, we grant the petition in part. *See Walker v. Second Judicial Dist. Court*, 136 Nev., Adv. Op. 80, 476 P.3d 1194, 1196 (2020) (explaining that traditional mandamus is available to correct a manifest abuse or an arbitrary or capricious exercise of discretion). The clerk of this court is directed to issue a writ of mandamus instructing the district court

to vacate its judgment and to recalculate the attorney fee award consistent with this opinion.  All other requested relief is denied.

_____, J.
Stiglich

We concur:

_____, J.
Parraguirre

_____, J.
Silver